813 F.2d 332
 L.A. DRAPER & SON, INC., Plaintiff-Appellant.
v.
WHEELABRATOR-FRYE, INC., a corporation; Hessco Industrial
Supply, Inc., a corporation; Fred Z. Hester, an
individual, Joseph E. O'Callaghan, an
individual, Defendants-Appellees.
 No. 85-7658.
 United States Court of Appeals,
Eleventh Circuit.
 March 27, 1987.
 
 Thad G. Long, Bradley, Arant, Rose & White, Joseph B. Mays, Jr., Jere F. White, Jr., Birmingham, Ala., for plaintiff-appellant.
 L. Vastine Stabler, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, L. Murray Alley, Birmingham, Ala., for Wheelabrator-Frye, Inc. and Hessco.
 Ralph D. Gaines, Jr., Gaines & Cleckler, P.C., Charlie P. Gaines, Talledega, Ala., for Hester.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before HILL and HATCHETT, Circuit Judges and THOMAS*, Senior District Judge.
 HILL, Circuit Judge:
 
 FACTS
 
 1
 This case has a rather complicated procedural history. The original action began in district court in Alabama. Appellant L.A. Draper & Sons, Inc. ("Draper"), alleged a violation of the Sherman Act, and included a state claim charging that appellee's actions constituted unfair business practices in violation of Alabama law. After Draper had presented its case at trial, the district court granted a directed verdict dismissing the Sherman Act claims, and dismissed the state claim without prejudice. Draper then simultaneously filed an appeal in this court and a claim in state court alleging similar unfair business practices. The state court dismissed the state action, because a federal appeal on the same case was pending, and the Alabama Supreme Court affirmed. Following that, we upheld the district court's dismissal of the antitrust claim, but remanded the state claim to the district court instructing it to exercise jurisdiction over the pendent state claim if the state forum was no longer available. Because the statute of limitations on the Alabama claim had run, the district court reopened the state claim of unfair competition in federal district court. The appellees then moved for summary judgment, which was granted by the district court, and Draper appeals again.
 
 
 2
 It is important to note that in granting the motion for summary judgment the court treated it, in effect, as a motion for a directed verdict because it relied on all of the evidence that Draper had presented at trial when the two claims, federal and state, were tried together. Because of this the record is more complete than one would expect to find in a summary judgment proceeding. Using all of plaintiff's evidence, the court supported its decision on alternative grounds, holding that (1) a cause of action for "unfair competition" did not exist in Alabama and/or (2) even assuming that the theory of recovery advanced by the appellant had been properly brought, the appellees would nevertheless be entitled to summary judgment based on the evidence presented at trial.
 
 
 3
 The facts, while not particularly complicated, are fairly voluminous.[1] Ladsco, a division of appellant L.A. Draper and Son, Inc. was engaged in the distribution of foundry supplies. Ladsco sold four products--primary and secondary aluminum, refractories, grinding wheels, and abrasive shot. Each of these products was obtained from a single supplier.
 
 
 4
 At all relevant times, appellee Fred Z. Hester was a vice-president and director of Ladsco, in charge of Ladsco's operations. In the spring or early summer of 1979, Hester decided to leave Ladsco and begin his own foundry supply business. While still working for Ladsco, Hester obtained a warehouse and equipment and prepared to begin operations. Three Ladsco salesmen invested with Hester and were to join him once the new company was in business.
 
 
 5
 By August of 1979, Hester had informed several of Ladsco's suppliers of his intent to begin his own company. One of the suppliers contacted was appellee Wheelabrator-Frye (hereinafter "WF"). Joseph E. O'Callaghan, an officer of WF, offered to hire Hester if he did decide to leave Ladsco. In August of 1979, Hester resigned from Ladsco. Almost immediately he began operation of his own company, Hessco. Four days after Hester's exit, Alan Draper attempted to get many of his remaining employees, including several who had secretly committed to become employees of Hessco, to sign an employment contract which contained a covenant not to compete. The employees refused and were terminated. Within three weeks, all but one of Ladsco's former employees were working for Hester. Hessco was therefore virtually identical to the Ladsco which had existed prior to Hester's resignation.
 
 
 6
 Many of Ladsco's customers soon turned to Hessco for their supplies. In early September 1979, WF offered to purchase both Ladsco and Hessco. Hessco accepted the offer and shortly thereafter became a wholly owned subsidiary of WF. Ladsco was unable to compete with Hessco and, sometime after the trial of this case, went into bankruptcy.
 
 I. ALABAMA BUSINESS TORT LAW
 
 7
 The nomenclature used to describe the business torts encompassed by this case is confusing. Initially, it seems that appellant alleged that the unfair state competition claim and the Sherman Act claim were identical, except that in a Sherman Act violation one had to show public injury and an effect on interstate commerce. This particular concept was apparently a novel theory of relief in Alabama, and the novelty of the claim was one reason for the trial court's reluctance to exercise pendent jurisdiction over it once the anti-trust claims were dismissed.
 
 
 8
 The district court's opinion granting summary judgment indicates that sometime during the course of the trial counsel for the appellant realized that he had taken the wrong track in presenting Draper's claims, and began to argue various other business tort theories, which he claimed were all subsumed within the rubric of "unfair competition." The district court refused to allow the appellant to pursue these claims as "species of unfair competition," without having raised them as independent causes of action before trial commenced. It interpreted an Alabama Supreme Court decision, City Ambulance of Ala. v. Haynes Ambulance, 431 So.2d 537 (Ala.1983) as holding that Alabama law does not recognize the tort of unfair competition, and granted summary judgment partially on that basis.
 
 
 9
 We find that the district court's reading of City Ambulance was overbroad. It is true that Alabama does not recognize a tort that is distinctly called "unfair competition;" and such is the holding of the City Ambulance case. However, the cause of action labeled "unfair competition" by appellants in the City Ambulance case was for conduct amounting to trade libel. The Supreme Court of Alabama simply noted that this was subsumed by the Alabama tort of "interference with business relations," and declined to create a separate tort similar to trade libel and call it "unfair competition." The only connection between Draper's claims and the City Ambulance case is appellant's unfortunate choice of words in describing his claim.
 
 
 10
 While the trial court's reluctance to allow appellant to change horses in midstream is understandable, the appellant did allege facts in its complaint, and in the pretrial order laying out its position, which would allow it to recover under traditional business tort theories, all of which are recognized in Alabama. These claims include breach of fiduciary duty, tortious interference with contractual relations, and tortious interference with business relations.[2] Specifically, Draper contends in section 4 paragraph 10 of its complaint that Hester unlawfully lured away Ladsco's employees. In paragraph 13 of the complaint, appellant alleges facts which, if proven, would amount to a breach of fiduciary duty by an employee who held a position of trust within the corporation. In paragraph 14 of the complaint, appellant alleges that Hester tried to steal away Ladsco's suppliers, while employed by Draper. This conduct would support an interference with business relations claim. In paragraph 5b of the pretrial order, appellant alleged facts which also supported its claim that Hester illegally interfered with Ladsco's relationships with its employees. Thus, it cannot fairly be said that the appellant did not allege facts stating a claim under Alabama law. The court's first reason for granting summary judgment is not adequate.
 
 II. CLAIMS AGAINST WF AND O'CALLAGHAN
 
 11
 The district court did hold that, based on the evidence presented at trial, all appellees were entitled to summary judgment on the merits. By the district court's own observation, much of the evidence admitted at trial "is unnecessarily confusing and prejudicial now that there is no antitrust issue before the court." L.A. Draper & Son v. Wheelabrator-Frye, 560 F.Supp. 1138, 1145 (N.D.Ala.1983). Yet in order to grant summary judgment the court must find that there is no genuine issue of material fact, and all doubt as to the existence of a genuine issue of material fact must be resolved against the nonmoving party. Hayden v. First Nat'l Bank of Mt. Pleasant, Texas, 595 F.2d 994 (5th Cir.1979).
 
 
 12
 The court correctly dismissed all claims against Wheelabrator Frye and O'Callaghan. Business records[3] summarizing the August 1, 1979 meeting between Hester and WF representatives indicate that WF officers were merely interested observers of the activities surrounding Hester's exodus from Ladsco. (Plaintiff's ex. # 29 and 30). WF was faced with the breakup of its principal southeastern distributor. While it tried to keep out of Ladsco's intra-company difficulties, WF had to take some action to protect distribution of its product. One internal WF document demonstrates that the management considered several distribution alternatives, including buying both Ladsco and Hessco so that WF could function as its own distributor. (Plaintiff's ex. # 21, 51 and 51B). Other documents indicate that such an offer was in fact made. (Plaintiff's ex. # 32). The appellant presented no evidence pointing to any conspiracy or conscious intent to destroy Ladsco's business. No evidence came to light indicating that WF did anything but try to protect itself in a reasonable and responsible manner. The company and O'Callaghan are entitled to summary judgment on all claims against them.
 
 III. CLAIMS AGAINST HESTER
 
 13
 As against Hester, the district court found that he had not induced other Ladsco employees in violation of his fiduciary duty. In dismissing this claim, the district court relied on the Alabama case of James A. Head and Company v. Rolling, 265 Ala. 328, 90 So.2d 828 (1956). In Head, as here, the plaintiff, James A. Head and Company, sued several of its former managerial employees for breach of fiduciary duty as a result of their establishment of a competing business. The plaintiff alleged that several of its employees had been induced by the defendants, Rolling et al., to leave Head and go to work for them. Head also alleged that, during and after their employment at Head, the defendants had obtained many of Head's suppliers for the their own business. The court found that the invitation placed by Rolling to two Head employees did not violate any fiduciary duty because there had been no discussion of salary or working conditions, and that one of the departures had occurred at the instigation of the employee rather than the defendant. Here the district court found these factors dispositive of Draper's claim, stating:
 
 
 14
 [T]he mere fact that these salesmen or any other employees of Ladsco were told by Hester that he was leaving Ladsco or even engaged in a general discussion with Hester regarding employment is not, under Head, a breach of fiduciary duty. Plaintiff failed to adduce any substantial evidence to show that there was an active and purposeful inducement of these employees, i.e., there was no substantial proof of any discussion of salary or working conditions between Hester and any Ladsco employees.
 
 
 15
 Appellees contend that the head of Ladsco, Allen Draper, was himself responsible for his employees' exodus to the newly formed Hessco. Evidently a few days after Hester left Ladsco, Mr. Draper required all his employees to sign a covenant not to compete, or be terminated. According to the appellees, the covenant retained each employee's employment-at-will status. Therefore any employee could be fired at any time and find himself committed not to go into the same business for two years. The Ladsco employees were understandably reluctant to put themselves in this position, and Mr. Draper terminated them.
 
 
 16
 An examination of the record in this case indicates that summary judgment was not appropriate on this issue. The material facts surrounding the departure of Hester were hotly contested. For example, the testimony of one of the employees who left Ladsco to join Hessco, Jerry Ellis, indicates that Hester invited him to join, and that he would be required to invest $20,000 to do so.[4] This is very different from Head, where the contract was more casual, and in one case instigated by the employee. A jury should have been allowed to decide whether or not Hester lured employees away from Ladsco in violation of Alabama law.
 
 
 17
 Appellant also seeks damages allegedly suffered when Hester obtained Ladsco's suppliers. The facts supporting this claim were dealt with by the district court as stating a claim for interference with business relations and breach of fiduciary duty. The tort of interference with business relations consists of an intentional act of interference which causes harm to the plaintiff's business. Purcell Company, Inc. v. Spriggs Enterprises, Inc., 431 So.2d 515, 522 (Ala.1983).
 
 
 18
 Here the disputed issue is really timing. Appellant contends that Hester had no right to solicit Ladsco's suppliers while he was still employed at Ladsco. The district court found that Hester had a right to solicit Ladsco suppliers for his own business.
 
 
 19
 Alabama law clearly states that once an agent has terminated his agency, if he acts in good faith and without fraud, he can engage in competition with, and even to the injury of, his former principal. The only restraint the law lays on the retiring agent is, that he "must tell the truth when he speaks of his former employer and his business, and shall be guilty of no fraud or deceit at his expense, for the profit of himself or another." Head, 90 So.2d at 840 (quoting Scottish Union and National Insurance Co. v. Dangaix, 103 Ala. 388, 15 So. 956, 958 (1893).)
 
 
 20
 However, the law makes clear that this right of competition does not arise until the agent has terminated his position of trust with his principal. An agent intending to go into business for himself is entitled to make preparations for doing so while still an agent, but courting the suppliers of one's employer is not permissible preparation. In the Head case, relied upon by the district court, the departing agent did not tell any supplier that he was beginning his own business until after he had terminated his agency on January 1, 1952. The Head court stated:
 
 
 21
 Representatives of several suppliers who left Head testified that there was no solicitation of their representation by respondents until after January 1, 1952.... If [Rolling] had written.... [to Head's suppliers] that he was going to leave Head, he would much more have been subject to a charge of disloyalty.
 
 
 22
 Id., 90 So.2d at 841, 842.
 
 
 23
 The record here indicates that Hester did approach Ladsco suppliers about selling their products before he had actually terminated his employment with Ladsco. Hester admits this in his own testimony, and WF documents confirm this fact. The evidence shows that Hester, while employed by Ladsco, initiated the contacts, and used Ladsco funds to pay for trips during which he solicited Ladsco suppliers for his own soon-to-be-formed company.
 
 
 24
 In Head the defendants began business just two weeks after leaving their employer. In interpreting that case, the trial judge here reasoned that some solicitation "must have" occurred prior to their leaving, or the Head defendants would not have been able to start their own business so soon after departing. Thus, the court in this case found that under Head some predeparture solicitation is acceptable, and that Hester's actions did not constitute a tort.
 
 
 25
 We find this inference unwarranted. In Head, the defendants solicited the suppliers of their former principals only after they had terminated their agency relationship. Evidence in this record, specifically Hester's testimony and business records obtained from Ladsco's suppliers, makes it clear that Hester did in fact solicit business for himself, using his expense account to do so, while employed by Ladsco. This is clearly actionable under Alabama law. A jury should have been able to decide whether this constituted a breach of his fiduciary relationship with his former employer. Summary judgment on this claim should have been denied.
 
 
 26
 Finally, the district court held that any damages to Ladsco cannot be traced to the actions Hester took prior to the termination of his agency. Apparently, the district court found that Hester would have obtained these suppliers whether or not he approached them before actually leaving Ladsco, due to his own competitive efforts.
 
 
 27
 This logic could be used to thwart a damage award in any instance where an agent sets up a competitive business and unlawfully takes business away from his employer. While this Court will not undertake to review them in detail, Alabama law does provide various remedies for a breach of fiduciary duty, including the imposition of a constructive trust on proceeds obtained in violation thereof. See e.g., J.O. Banks v. Paul W. Bryant, Jr. et al. 497 So.2d 460 (Ala.1986). In addition, where an agent breaches his fiduciary duty, his employer is entitled to nominal damages even where there is a failure of proof regarding actual damages. Further, "[w]hen the evidence establishes a breach, even if only technical, there is nothing discretionary about the award of nominal damages." Kemper v. Cox & Associates, 434 So.2d 1380 (Ala.1983). In appropriate circumstances, an award of nominal damages will support a punitive damage award. Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala.1981); Walker v. Cleary Petroleum Corp., 421 So.2d 85 (Ala.1982). We do not express any opinion on the desirability or necessity of using any of these remedies here; we merely list them to point out that the district court overemphasized the role that causation has to play in this type of case. If Draper can prove a breach on the part of Hester, it will be entitled to at least nominal damages.
 
 
 28
 The district court's judgment with respect to claims against WF and O'Callaghan is AFFIRMED; the grant of summary judgment in favor of Hester is REVERSED and the case REMANDED for trial on those claims, in a manner consistent with this opinion.[5]
 
 
 
 *
 Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 Because the facts are set out in the two previous opinions in this case, we present an abridged version of the events surrounding this litigation. More detailed accounts can be found in L.A. Draper & Son v. Wheelabrator-Frye, Inc., 560 F.Supp. 1138, (M.D.Ala.1983), aff'd in part and remanded, 735 F.2d 414 (11th Cir.1984)
 
 
 [2]
 We note in passing that the Alabama Supreme Court recently combined the latter two causes of action. See Gross v. Lowder Realty Better Homes and Gardens, 494 So.2d 590 (Ala.1986)
 
 
 [3]
 Appellant contends that these documents were prepared with an eye toward litigation, and that this shows WF had something to hide. We find this assertion unfounded. Indeed, it is curious that Draper should take such a position, as that would militate against the admissibility of these documents under the business records exception to the hearsay rule. While the documents do exonerate WF and O'Callahan, they also form a large part of appellant's case against Hester
 
 
 [4]
 The trial transcript reads as follows:
 Q. Did there come a time when you were working for LADSCO when Fred Hester told you that he was going to resign from LADSCO?
 A. Yes, sir.
 Q. About when was that, Mr. Ellison?
 A. The best of my knowledge, it was sometime in June.
 Q. June of 1979?
 A. Yes, sir.
 ....
 Q. And about the same time or at the same time did he also tell you that he was thinking of going into a business?
 A. Yes, sir.
 ....
 Q. And did he also ask you if you would like to be an investor in that business?
 A. Yes Sir.
 Q. Now, he asked you to come along and be an investor in that business, didn't he, Mr. Ellison?
 A. Yes, sir.
 Q. He suggested that to you. You didn't suggest it to him.
 A. Well, he said he was going into a business of some kind at the time he said it, and asked me if I would like to be involved; and I said, yes, sir, I would.
 Q. Yes, sir. And you knew that was to be the foundry supply business; didn't you?
 A. Well, I assumed it was, yes, sir.
 Q. And, of course, it has turned out to be the foundry supply business hasn't it?
 A. Right, yes, sir.
 Q. Was there any talk about how much money you would have to put up to get in that business?
 A. Well, later on, there was.
 Q. And how much money was it that you were to put up?
 A. I was to put up $20,000.
 Q. And what was your understanding of what you would get for your $20,000?
 A. 10 percent of the business.
 
 
 [5]
 On remand, the district court may, if it so desires, require the appellant to amend its complaint using more precise (and correct) names for the causes of action it is putting forward. This would help clarify the proceedings