311 So.2d 312

**MID–STATE HOMES, INC., a corporation**

v.

**Robert L. JOHNSON.**

**SC 992.**

Supreme Court of Alabama.

April 3, 1975.

Rehearing Denied May 1, 1975.

Bloodworth, J., with whom Jones, J., joined, concurred specially and filed opinion.

James H. Tompkins, N. Pride Tompkins, Murray W. Beasley, Tuscumbia, for appellee.

R. A. Norred, Birmingham, for appellant.

EMBRY, Justice.

This appeal is from a judgment for $12,500 damages on a jury verdict. The action was submitted to the jury as one seeking damages owing to false representations and for money had and received. Code of Ala., Tit. 7, § 108; Form 11, Rule 84, ARCP.

The twenty-three assignments of error complain of: rulings admitting or excluding evidence; failure of the court to direct a verdict in favor of defendant; errors in the oral charge to the jury, error for failing to give written jury instructions requested by defendant, and a judgment contrary to the evidence and law, as well as excessive. The substantive question presented for review is, in fact, only one. Does the recognized principle of law: One who has been defrauded may either rescind the transaction or affirm and sue at law, but may not do both, preclude recovery of considerations paid and other damages (including those punitive in nature), after "dissaffirmance" of the transaction? The circumstances of this particular case dictate an answer in the negative.

Plaintiff, Johnson, sold his farm in Florida in late 1971 and requested his sister Louise Jackson to locate property in Alabama for purchase by him. Several weeks later she located a residence, situated on four acres of land, known as the McClurg property. On the property was a "for sale" sign displaying a telephone number. Calling that number put her in touch with one Jerry Williams. She later met with Jerry Williams at the office of Jim Walter Homes in Muscle Shoals, Alabama. At a second meeting with Williams she gave him the Florida telephone number of her brother, Johnson. She remained in the presence of Williams while he read a sales contract to Johnson over the telephone. During that conversation the alleged misrepresentation was made:

"A. He [Jerry Williams] read the contract to me on the phone and he said 'Would you like to speak with your sister?' I said 'yes.' So my sister was on the phone and she said 'Is everything all right? Do you want me to give him the money—the deposit—until you come home?' I said 'yes, go ahead and give

him the money.' Then they mailed me the contract and I read the contract and I signed it. He told me on the phone that anytime I came home after that, the contract was signed and I could have immediate possession.

"Q. Who said that to you?

"A. Jerry Williams."

It is apparent from the evidence concerning that conversation with Williams and with his sister, Johnson expected the right to immediate possession of the McClurg property. Obviously he relied on that statement when he instructed his sister to give Williams the money for the down payment or deposit. At the time Johnson did not know that on an earlier date one Harold Savage had purchased the McClurg property after its sale for unpaid taxes.[1] Savage went into possession following that purchase and made certain repairs to the dwelling house. At trial, in February 1974, Savage claimed continuous possession of the McClurg property from and after his purchase. A certificate of redemption from the tax sale was in evidence. On the face of that instrument it appeared that defendant Mid-State had redeemed the McClurg property almost one and one-half years after Johnson filed suit against Mid-State. By the date of redemption Johnson had purchased other property for his place of residence.

Subsequent to making the down payment for Johnson Mrs. Jackson visited the McClurg property several times. She visited the property twice in the company of Johnson. After Johnson had returned to Florida, Mrs. Jackson was informed by their older brother (who lived near the McClurg property) that Savage disapproved of her coming onto the McClurg property. She passed this information on to Johnson. He returned from Florida and made efforts to

---

1. Only the two acres on which the dwelling house was situated was sold for taxes. The other two acres of the four which Johnson contracted to purchase had previously been purchased by defendant Mid-State Homes, Inc. to gain access to the property from a public road.

communicate with Mid-State or Jim Walter Homes.[2] Ultimately he succeeded in talking with representatives of Jim Walter Homes. He was informed that as far as they were concerned he, Johnson, had possession of the McClurg property. He was told he could "move in." After Johnson purchased another residence, in which he was dwelling, he was visited by Savage. Savage stated that he, Savage, owned the McClurg property and was in possession.

In its challenge to the sufficiency of the evidence to support the verdict and judgment Mid-State contends that Johnson had the burden to establish lack of possession by Mid-State. It asserts that Johnson failed to meet this burden.

Johnson says that representation was made to him, upon which he relied, of his right to immediate possession; that the tax sale prior to the representation belied the truth of such representation. Knowledge of the falsity of the representation, he says, is patent from the fact the delinquent taxes were owed by the mortgagor against whom Mid-State foreclosed, and obtained title, only by which it could give Johnson the right to immediate possession.

The evidence was sufficient to authorize the jury to find that the representation was made; was false, known to be false or recklessly made without knowledge; acted on by Johnson; and was of a material fact.

We are not here dealing with competing *claims of title,* rather a *representation regarding right to possession.* With this in mind the admissibility of the statement of Mrs. Jackson in response to a question asked her by Mid-State becomes evident.

"Q. All right, how many times all total did you go out there before anybody came up to you?

"A. Well, about the third time we went, we found out that this man—my brother that lives out there called me and said that Mr. Savage said he had rather we wouldn't come back out there on that property any more.

"MR. NORRED: I move to exclude that. It is not responsive and it is hearsay—the communication given to her by somebody else.

"BY THE COURT: I overrule the motion.

"MR. NORRED: We except."

Note, this question was not asked and response made in a situation where contested claims of title were being considered. In that circumstance, e.g. an action in ejectment to quiet title, the declaration of a party as to the source of his title would not be admissible. Neither would declarations about past transactions or contracts relating to such be relevant. Weston v. Weston, 269 Ala. 595, 114 So.2d 898.

The fact that the words were spoken, not the truth of them, make the declaration admissible on the issue of colorable *claim of possession* by Savage which put Johnson on *notice* that his attempt to gain possession would be in the teeth of an asserted adverse claim of Savage. It was the obligation of Mid-State to place him in possession through *its* actions. That it made no attempt to do so, the jury could consider in determining whether the representation was false and known to be so, or recklessly made without knowledge.

Great latitude is allowed in admitting evidence on the issue of alleged fraud. May v. Strickland, 235 Ala. 482, 180 So. 93; National Surety Co. v. Julian, 227 Ala. 472, 150 So. 474. Most often the perpetrator of fraud is the sole possessor of actual knowledge of such fraud. Undue restriction should not be placed on the introduction of evidence which has probative value, however slight, on this issue. Weight is for the jury. The trial judge

2. Mid-State Homes, Inc. is a mortgage holder and financing organization for Jim Walter Homes.

**64**

did not err when he failed to exclude the response of Mrs. Jackson to the question. Neither was it error to admit testimony of Savage relating to his purchase of the property at tax sale. That evidence was relevant to show the existence of his claim of possession adverse to that of Johnson.

Now to the prime question. Affirm and sue for damages—rescind and seek restoration, not both?

During trial of this action several illuminating events occurred. Exposition of them may facilitate understanding of this portion of our opinion. In opening statement, Johnson's attorney informed the jury that Johnson was asking for damages. Attorney for Mid-State objected:

"I would like to reserve an objection to that portion of Mr. Tompkin's argument wherein he said 'We ask damages.' I base my objection on the grounds that the plaintiff has already made collection [sic] [election] in this case to rescind the contract and is therefore limited to recovery of the amount that he paid on the contract."

This objection was overruled.

During its oral charge the court instructed the jury:

"* * * [W]here a person has disaffirmed a contract because of legal fraud, as I defined it to you, and the fraud is oppressive, gross, or malicious, then the damages that may be assessed by the jury, if the jury does assess damages, then the jury has the right to award punitive damages if they so desire. * * *"

Later on in that charge the court said:

"* * * Punitive damages may not be recovered in an action for deceit unless the fraud complained of is gross, malicious, oppressive and committed with an intention to injure and to defraud. * * *"

Next the court related:

"* * * Ladies and gentlemen of the jury, I am going to make a comment on the evidence and the lawyers have agreed that I might do it. In this lawsuit, I think the undisputed facts are, and the evidence is, that the plaintiff in this case is not claiming under the contract. He contends that he has legal reason to disaffirm it and therefore, your verdicts must be consistent in this case. What I mean when I say that is, since the plaintiff is not standing on the contract, you can not bring in a verdict both for the plaintiff against the defendant and the defendant against the plaintiff. Your verdict will have to be either for the plaintiff against the defendant or (sic) his fraud suit or for the defendant, Mid State Homes, under his suit over the contract against the defendant; whereas if he was standing on the contract, it would be possible to bring a verdict for both, you can not do it because he is not standing on the contract. He has disaffirmed it. The only question is to determine whether or not fraud was practiced upon him in this case in that regard. * * *"

On the question of damages, the court charged:

"* * * Now, ladies and gentlemen, if you find for the plaintiff in this case, Johnson, the measure of damages would be such amount as would reasonably compensate him for any injury he may have received and in reaching that amount, I charge and instruct you that it will be the amount of money paid by the defendant [sic] [plaintiff] Johnson as compensatory damages and if you find and feel like in this case that the injuries or damages or any fraud, if you so find, that has been practiced on the plaintiff Johnson has been oppressive, gross or malicious, then you also have the additional right in your discretion to award punitive damages * * *"

The jury found for Johnson under those instructions by the court. Implicit in the finding was the determination that he had rescinded the contract. Recovery for money had and received (aggregate of monies paid under the contract) was thereby limited to some $715. The verdict was for $12,500, thus it is clear the additional $11,785 was punitive damages. Loch Ridge Construction Co., Inc. v. Barra, 291 Ala. 312, 280 So.2d 745.

 The central issue determinative of the prime question is whether the award of punitive damages was proper. It was. Ringer v. First National Bank of Stevenson, 291 Ala. 364, 281 So.2d 261; quoting Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685, which in turn quoted Alabama Great Southern Railway Co. v. Sellers, 93 Ala. 9, 9 So. 375 stated:

" 'The rules in Alabama appear to be as follows:

" 'To recover *compensatory* damages for fraud and deceit, plaintiff must show that he has suffered an actual *pecuniary loss* as a result of the fraud.

" 'To recover punitive damages for fraud and deceit, plaintiff must show that the fraud is of the character described in Alabama Great Southern Railway Co. v. Sellers, supra [93 Ala. 9, 9 So. 375: "acts . . . which involve malice, wilfulness or wanton and reckless disregard of the rights of others"], as justifying punitive damages, and that plaintiff has suffered actual damages as the proximate result of the fraud; but, as the terms actual and nominal are here used, nominal damages are actual damages, and punitive damages may be awarded although plaintiff's actual damage is purely nominal.' " (emphases added)

 To support an award of punitive damages it must be shown that Johnson suffered, at least, nominal damage; also

the actions of Mid-State meet the criteria set out, supra.

 Purists may argue that restitutionary recovery upon rescission is not recovery of *damages*. We are not deterred in making decision to the contrary by such sophistic argument:

"In legal contemplation, the term 'damages' is the sum of money which the law awards or imposes as pecuniary compensation, recompense, or satisfaction for an injury done or a wrong sustained as a consequence either of a breach of a contractual obligation or a tortious act. * * *" 22 Am.Jur.2d, Damages § 1.

Recovery by Johnson of payments made under the contract are "damages" in legal contemplation.

From the testimony of Savage, Johnson and employees of Mid-State, the jury could reasonably conclude that the actions of Mid-State met the criteria. Undoubtedly the jury concluded that the representation was made either maliciously or wantonly, with reckless disregard of the rights of Johnson. That being true the award of punitive damages was justified.

" * * * [I]mposition of punitive damages in cases of fraud and deceit is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing similar wrongs. * * *" Loch Ridge Construction Co., Inc. v. Barra, 291 Ala. 312, 280 So.2d 745; Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24.

We realize that no Alabama case has held precisely as we hold today. However we do find authority from another jurisdiction which supports the reasoning of this opinion. The California Supreme Court, speaking through Justice Traynor in Ward v. Taggart, 51 Cal.2d 736, 336 P.2d 534, held that judgment for plaintiff for $1000 per acre of $5000 per acre payments made in purchase of real estate plus

$36,000 punitive damages, in an action tried on a fraud theory, was proper:

> "Taggart contends that if recovery is based on the theory of unjust enrichment, the judgment for exemplary damages must be reversed. The argument runs that under this theory the law implies a promise to return the money wrongfully obtained, that the plaintiff waives the tort and sues in assumpsit on an implied contract, and that since such an action is 'contractual' in nature, it does not admit of * * * exemplary damages * * * Taggart's obligation does not arise from any agreement between him and plaintiffs. It arises from his fraud and violation of statutory duties. His fraud is not waived, for it is the very foundation of the implied-in-law promise to disgorge. * * *

> "Courts award exemplary damages to discourage oppression, fraud, or malice by punishing the wrongdoer. * * * Such damages are appropriate in cases like the present one, where restitution would have little or no deterrent effect, for wrongdoers would run no risk of liability to their victims beyond that of returning what they wrongfully obtained. * * *"

We agree with this reasoning. Punitive damages are for punishment and prevention. To allow them when a contract is affirmed, and not when there is a rescission, is illogical when the purposes of punitive damages are considered. The punitive and deterrent force of the law should be present in both types of cases since both arise from perpetration of fraud.

■ We hold today that where one rescinds a contract induced by fraud and recovers even nominal damages, then in an appropriate case he may also recover punitive damages. We hold that under the facts of this case, and the instructions given to the jury by the trial court, Glass v. Cook, 257 Ala. 141, 57 So.2d 505, does not preclude recovery of punitive damages in a suit for damages whether the contract is affirmed or rescinded.

For the reasons stated, assignments of error complaining of: admission or exclusion of evidence; failure to direct a verdict in favor of defendant; errors in the oral charge to the jury; error for failing to give written jury instructions requested by defendant; that the judgment and verdict are contrary to the evidence and law, and the verdict is excessive are not well taken.

Affirmed.

FAULKNER and ALMON, JJ., concur.

BLOODWORTH, J., with whom JONES, J., joins, concurs specially.

BLOODWORTH, Justice (concurring specially).

I concur in so much of the opinion authored for the Court by Justice Embry—which holds that one who rescinds a contract induced by fraud (if the fraud was malicious, oppressive, or gross, the representations being made with knowledge of their falsity, or made so recklessly as to amount to the same thing, and with the purpose of injuring the plaintiff) may recover punitive damages if he is entitled to recover actual damages, although the latter may be merely nominal. I do not agree that "restitutionary damages" constitute "actual damages." Caffey v. Alabama Machinery & Supply Co., 19 Ala.App. 189, 96 So. 454, cert. den. 209 Ala. 466, 96 So. 459 (1922); See also Alabama Machinery & Supply Co. v. Caffey, 213 Ala. 260, 104 So. 509 (1925); Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971); Loch Ridge Construction Company, Inc. v. Barra, 291 Ala. 312, 280 So.2d 745 (1973); § 389 Fraud and Deceit, 37 Am.Jur.2d, p. 527.

The general rule is stated in Glass v. Cook, 257 Ala. 141, 57 So.2d 505 (1952) to be that one defrauded has an election either to affirm the contract and sue for damages for the deceit or disaffirm and sue for his money back but that he may

not do both. Although a number of cases express the rule in the same or slightly different, language [see Fraud, Vol. 10A, Alabama Digest, ☞31], a better statement of it is found in Kennedy v. Collins, 250 Ala. 503, 35 So.2d 92 (1948). Justice Stakeley qualified this general statement of the rule by pre-fixing the word "ordinarily." This is the key to the rule. While "ordinarily," one must, of course, give up the property and restore the benefits he has received if he rescinds or disaffirms and then sue for his money back—this does not preclude an action for damages for the fraud practiced by the other party in procuring the contract. (In the present case, there was no restoration by plaintiff of possession or benefits because he received neither.)

The doctrine of the two *Caffey* cases, supra, clearly permits, upon disaffirmance, a suit for recovery of the money paid under the contract and the recovery of punitive damages, if the pleading and proof justify it. This is an exception to, or perhaps further refinement of, the general rule and does not conflict with it. The *Caffey* cases have never been overruled and have been cited as recently as 1973 in the *Loch Ridge* case, supra.

JONES, J., concurs.