421 So.2d 85 (1982)
Charles M. WALKER and Mary R. Walker
v.
CLEARY PETROLEUM CORPORATION, et al.
80-592.
Supreme Court of Alabama.
June 18, 1982.
Rehearing Denied October 22, 1982.
William H. Atkinson of Fite, Davis & Atkinson, Hamilton, for appellants.
Perry Hubbard and J. Foy Guin III of Hubbard, Waldrop, Tanner & deGraffenried, Tuscaloosa, for appellees.
PER CURIAM.
This is an appeal from a judgment based on a directed verdict entered in favor of Defendants (several corporations) at the close of Plaintiffs' evidence.
Appellants (Plaintiffs) Charles and Mary Walker own a three-acre tract of land in Fayette County.[1] This land is part of a 320-acre area upon which Appellees (Defendants) with the permission of and by order of the State Oil and Gas Board, conducted "forced pooling," or "forced integration," of the individual tracts and drilled for the gas thereunder.
Charles Walker, a merchant marine and the ship's "electronics man" was aboard a ship in the Indian Ocean at the time of the *86 Board's hearing on whether to allow the forced pooling of the large tract which included Plaintiffs' property. Notice of the hearing was by publication as allowed by Code 1975, § 9-17-7, and prescribed by the Board's internal rules. Charles Walker, however, who had refused on two occasions to enter an "agreement" with Appellees, was the only landowner with whom Appellees did not have an "agreement" with respect to the various tracts of land contained within the 320-acre tract.
Even though the publication and alleged attempts to personally reach Charles Walker failed to notify him of the hearing, the Board found that proper notice had been given, proceeded with the hearing, and issued the order to proceed with the unitization.
Appellants filed suit in the circuit court, claiming wrongful removal of gas from their property and wrongful failure to pay them for the gas removed.
The trial court entered a directed verdict for Defendants. The Walkers' motion for a new trial claimed that the notice provided by the Board with respect to the hearing had failed to afford Charles Walker due process of law. The motion was denied, and the Walkers appeal.
We reverse and remand.
The Walkers submit one issue on appeal: "Whether the taking of their gas was wrongful because the notice provided prior thereto failed to meet the due process requirements of the United States Constitution."
Section 9-17-7(b) states that the notice required to be given prior to the hearings of the State Oil and Gas Board may be "given in the manner and form as may be prescribed by the board." The Walkers maintain that the "state action" of the Board in force pooling several tracts of land requires the protection of the due process guarantees of the U.S. Constitution, and that the notice rules adopted by the Board fall short of that standard.
Rule L-10 provides for notice to be given:
"Notice. Notice of each public hearing before the Board shall be given by publication once in a newspaper of general circulation published in Birmingham, Montgomery, and Mobile, Alabama, at least ten (10) days prior to such hearing. In addition, when such hearings shall pertain to specific land and have less than statewide application, or shall pertain to one (1) field or pool, such notice shall also be published in a newspaper of general circulation in the county or counties wherein the affected land lies, provided such county or counties have a daily or weekly newspaper of general circulation. Such publication may also be made in other newspapers, as deemed advisable by the Board. Publication fees and expenses incurred by the Board for such notices shall be prorated among petitioners in a manner that will account for each petitioner's portion of such notices and shall be promptly paid by each petitioner of the Board. Proof of notice shall be by affidavit of the publisher or editor, or their duly authorized agent, of the newspaper in which publication is made."
Rule L-11 prescribes the contents of the notice:
"Such notice shall be in the name of the State Oil and Gas Board of Alabama. Such notice shall state the docket number, the time and place of hearing, and shall briefly state the general nature of the petition or motion to be considered. Such notice shall also state the name of the petitioner or movant or at least one of them if more than one, and, unless such petition or motion is intended to apply to or affect the entire State, it shall accurately describe by appropriate section, township, range and county the lands that may be affected by such petition or motion."
Appellants' primary contention rests upon the reasoning in several landmark decisions of the United States Supreme Court. Quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), Appellants first point out that "[the Due Process Clause] require[s] *87 that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane, 339 U.S. at 313, 70 S.Ct. at 656. Quoting Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), Appellants also contend that the "notice required is one `reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action.'" Bank of Marin v. England, 385 U.S. at 102, 87 S.Ct. at 276. Appellants submit that the notice rules promulgated by the Board were not calculated to bring this matter to their attention. See Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).
Conceding the viability of notice by publication in Alabama (ARCP 4.3), Appellants contend that "publication is permitted only in those instances where more desirable methods have been ineffectual," and that those "more desirable methods" were not exhausted in attempts to give Charles Walker adequate notice.
Initially, we note that the published "notice" rules of the Board are pursuant to the statutory language of § 9-17-7(a):
"The board shall prescribe its rules of order or procedure in hearings or other proceedings before it under this article."
The Board, however, has made no attempt to require personal service; rather, it elected to limit its notice requirements to notice by publication.
While the statute itself fails to require the Board to prescribe notice rules that meet requisite constitutional due process standards, the issue now before us is whether the Board's notice rule falls short of the constitutional test as applied to the facts of the instant case. When that application is made, we find that notice by publication did not meet the constitutional test.
Appellees concede they knew that Charles Walker was aboard ship at the time the notice by publication of the Board's hearing was made. In his capacity as "electronics man," Walker was solely responsible for the radar, radio telephones, radio telegraph, and direction finder. These facts constrain us to conclude that any reasonable attempt to contact Walker while he was aboard ship would have been successful.
Furthermore, notwithstanding the legal efficacy of publication as a viable form of notice, this Court has, when necessary in order to comport with constitutional standards, found notice by publication to be unacceptable. In Whitfield v. Sanders, 366 So.2d 258 (Ala.1978), we quoted controlling language from Mullane:
"`[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.' [Mullane, 339 U.S. at 314-315, 70 S.Ct. at 657]." Whitfield, 366 So.2d at 259.
Charles Walker was the only landowner with whom Appellees had not executed an agreement containing the terms for the unitization. We cannot say that the notice by publication was the proper means that "one desirous of actually informing [Walker] might reasonably [have adopted] to accomplish it," when Charles Walker's identity was known, his general whereabouts were known, and his specific location could have been ascertained. The unreasonableness of the attempted notice by publication is further heightened by the incongruity of the use of four Alabama newspapers which Appellees knew, or should have known, would never reach Walker. Therefore, the notice was a "mere gesture."
While § 9-17-7 gives discretion to the Board in promulgating its rules and regulations, the statute also says:
"(d) Should the board elect to give notice by personal service, such service may be made by any officer authorized to serve process or by any agent of the board in the same manner as is provided by law for the service of summons in civil actions in the circuit courts of this state. Proof of the service by such agent shall be by the affidavit of the person making personal service."
Facially, then, the statute falls short of constitutional requirements.
*88 The ultimate test here, however, is the propriety of the notice in the instant case. We do not attempt to decide under what extreme circumstances notice by publication would be constitutionally adequate for due process. We decide under the facts of this case, however, that publication was an inadequate method of notice.
The record shows that Walker is entitled to receive, and was offered, the entire value of the oil and gas taken from his land, reduced only by actual, reasonable expenses in producing the oil and gas. Appellees state that this money will be given to Walker any time he wants it. Since Walker has not suffered any economic damages, the most he could receive under the facts of this case would be nominal damages. See, Welch v. Evans Brothers Const. Co., 189 Ala. 548, 66 So. 517 (1914); Williams v. Clark, 50 Ala.App. 352, 279 So.2d 523, cert. denied, 291 Ala. 803, 279 So.2d 526 (1973).
In addition, the rule in this state is that a valid award of nominal damages will, in the proper case, support an additional award of punitive damages. See, Mid-State Homes, Inc., v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975); Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 300 So.2d 94 (1974); Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970); Ramos v. Fell, 272 Ala. 53, 128 So.2d 481 (1961). Therefore, if the failure to give notice was the result of malice, fraud, willfulness, or a reckless disregard of Walker's rights, then Appellant would be entitled to punitive damages, upon a showing of nominal damages, even though he has suffered no real economic loss.
In conclusion, the judgment based on the directed verdict is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER, JONES and ADAMS, JJ., concurring in part and dissenting in part.
JONES, Justice (concurring in part and dissenting in part).
I agree with the order of reversal and remand; but I disagree with the holding of the majority relating to the issue of damages. I write separately to express a different view. I begin with some additional observations concerning the nature of the constitutional violationthe lack of due process notice.
It matters not that actual notice to Walker would not necessarily have produced a different result at the hearing, nor that the Board had the authority to override his objections had he known of the hearing, appeared at the hearing, and strenuously objected. "Nonconsenting" and "lack of due process notice" do not somehow equate so that the nonconsenting result neutralizes the constitutional deficiency of lack of due process.
It is the Walkers' right to be notified, their right to appear at the hearing, and their right to be heard which are fundamentally guaranteed by the due process clause of the Constitution. When taken to its logical conclusion, Defendants' contention would not only avoid the necessity of notice, but the necessity for the hearing as well. If notice to an affected interest holder is inconsequential, because he ultimately has no power to prevent the taking as a matter of right, then the hearing itself partakes of the same lack of legal significance.
If "majority rule" is the basis of the Board's determination of the unitization issue, once a majority of the interest holders consent, no further proceeding, including notice to the nonconsenting interest holders (or the hearing itself, for that matter), need be required. The constitutional due process mandate cannot be reduced to such meaningless proportions.
It is the fundamental nature of the right to be present, and to be heard at the hearing, that mandates the notice requirements, and that subjects those who proceed with the taking of property, absent those notice requisites, to the imposition of damages. Likewise, the law does not impose upon *89 Plaintiffs the burden of proving special damages in this situation. To do so would be tantamount to leaving the Walkers remediless where they have suffered the clear violation of a fundamental right.
The payment for the Walkers' proportionate share of the gas removed from the well (the unitization project) reimburses their economic loss, but does not necessarily represent the damages suffered as a result of the unlawful interference with their property interest through the deprivation of their due process rights. See § 6-5-210.[1] While the law affords no specific standard of measurement for such damages, I would hold that, upon a retrial of this case, Plaintiffs are entitled to a directed verdict on the issue of liability, and that the jury should be instructed to award Plaintiffs damages which, in its discretion, would fairly and reasonably compensate them for the unlawful interference with their property rights under the circumstances.
To allow nominal damages only is tantamount to leaving the Plaintiffs remediless in the face of a clear violation of their constitutional rights.
FAULKNER and ADAMS, JJ., concur.
NOTES
[1] At the time of the forced pooling, Charles Walker was not married and was the sole owner of the property. Charles Walker married Mary R. Walker on December 11, 1978.
[1] Although Plaintiffs' claim is grounded upon § 6-5-210 (rights above and below surface), I would invite the reader's attention to a viable and growing field of law commonly denominated as "constitutional torts." Such claims ordinarily find their source in the factual context of a civil action against a government employee, alleging, for example, a fourth amendment violation. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). For a comprehensive treatment of Bivens, see Dolan, Constitutional Torts and the Federal Tort Claims Act, 14 U.Rich.L.Rev. 281 (1980). For a general discussion of the broader subject of civil damages arising directly from constitutional violations, see Comment, Bivens and the Creation of a Cause of Action for Money Damages Arising Directly from the Due Process Clauses, 29 Emory L.J. 231 (1980). Because of our own constitutional due process requirements, coupled with the civil remedy afforded by § 6-5-210, I do not deem it necessary to predicate the instant holding on the federal case precedents. See Whitman, Constitutional Torts, 79 Mich.L.Rev. 5 (1980).