The defendant, First Bank of Boaz ("the Bank"), appeals from a judgment entered on a $104,000 jury verdict for the plaintiff, Helen Fielder, who, individually, and as administratrix of the estate of her husband, D.B. Fielder, had alleged fraud in connection with a home improvement loan. We affirm.
The evidence, viewed in the light most favorable to the plaintiff, as the applicable standard of review requires us to view it, see Warren v. Ousley, 440 So.2d 1034, 1037 (Ala. 1983) (dealing with sufficiency of the evidence), shows the following: The Fielders went to the Bank to discuss the possibility of borrowing $25,000 to complete construction of an addition to their house and, while there, met with the Bank's senior vice-president, Harold Snyder, who had been their long-time personal loan officer, financial advisor, and friend. After discussing their financial needs with Snyder, the Fielders completed and submitted a loan application. Snyder subsequently informed the Fielders that their loan application had been approved and he recommended that they obtain credit life insurance. The Fielders agreed with Snyder's recommendation, but told him that because their house was to be used as collateral to secure the loan they did not want the loan unless the insurance could be obtained on the life of Mr. Fielder. The Fielders explained to Snyder that they could sell some of their land to raise the money necessary for the construction, but that they did not want to do that if they could get the loan. Knowing that the Fielders did not want the loan unless credit life insurance on Mr. Fielder was obtained, and aware that Mr. Fielder had been diagnosed as having emphysema and lung cancer, Snyder nevertheless assured the Fielders that the insurance company with which the Bank dealt would not reject Mr. Fielder's insurance application. Although Snyder explained to the Fielders that the insurance company had the right to reject Mr. Fielder's application, he assured them that he would obtain credit life insurance on Mr. Fielder. The insurance application, which was completed by Snyder, signed by Mr. Fielder, and submitted to the insurance company by the Bank, and which required disclosure of pertinent medical information relevant to Mr. Fielder's health, did not disclose the fact that Mr. Fielder had been diagnosed as having lung cancer. In an attempt to explain this material omission, Snyder testified that he "ran out of room" on the application.[1] Based on Snyder's assurance that credit life insurance on Mr. Fielder would be obtained, the Fielders closed the loan, which, including interest, the credit life insurance premium of $3,385.80, and various other charges, totaled $42,322.56. The Bank, which had acted as an agent for American General Group Insurance Company, retained one-half of the premium as a commission for selling the insurance and promptly mailed a certificate of insurance to the Fielders. That certificate stated that $42,322.56 worth of credit life insurance coverage had been applied for and that the insurance company had the right to reject the application within 60 days of the date of the loan. Subsequently, the insurance company did reject Mr. Fielder's application and instructed the Bank to notify the Fielders of that fact and to refund the premium. The letter rejecting Mr. Fielder's application was mailed from Jacksonville, Florida, 16 days prior to the date that the Fielders' account was credited. Snyder testified that he talked with Mr. Fielder in the Bank on the date that the account was credited; however, other evidence showed that the only banking transaction that the Fielders had at the Bank on that date was made by Mrs. Fielder at a drive-in window and that Mr. Fielder was too ill to leave his home and, in fact, did not leave his home on that date. There was no other evidence that *Page 896 
Snyder, or anyone else associated with the Bank, notified the Fielders that Mr. Fielder's insurance application had been rejected. Mr. Fielder died approximately 14 weeks after the loan was closed, and shortly thereafter the plaintiff learned that Mr. Fielder's insurance application had been rejected. This suit followed.
The plaintiff alleged in her complaint that Snyder had falsely represented that he would obtain the credit life insurance and that he had suppressed the fact that the insurance company had rejected Mr. Fielder's application. The plaintiff further alleged that she and her husband had relied initially on Snyder's representation that he would obtain the insurance and later on his silence. The jury awarded the plaintiff $42,000 in compensatory damages under the misrepresentation count, but refused to award her punitive damages after specifically finding that the Bank "did not consciously or deliberately engage in fraud." The jury initially returned a verdict for the plaintiff under the suppression count and awarded $42,000 in compensatory damages and $20,000 in punitive damages. After discussing that verdict with the attorneys, the trial court told the jury that it could not compensate the plaintiff under both the misrepresentation count and the suppression count and instructed the jury to deliberate further. The jury later returned a verdict under the suppression count for zero compensatory damages and $62,000 in punitive damages. The original verdict under the misrepresentation count was left intact. The Bank's post-judgment motion for a judgment notwithstanding the verdict or, in the alternative, for a remittitur or new trial, was denied by operation of law pursuant to Rule 59.1, Ala.R.Civ.P.
The dispositive issues on this appeal are as follows:
 1) whether the evidence was sufficient to submit the misrepresentation and suppression claims to the jury;
 2) whether the compensatory damages awarded under the misrepresentation count were excessive; and,
 3) whether the verdict awarding punitive damages under the suppression count should have been set aside on the ground that the jury did not award either compensatory or nominal damages.
With regard to the first issue, the Bank contends that Snyder's representation that he would obtain the credit life insurance for Mr. Fielder was, at best, a promise to perform a future act and that there was no evidence that Snyder, at the time he made the promise, did not intend to perform. The Bank further contends that the evidence was insufficient to show that the plaintiff justifiably relied on Snyder's representation. In support of this contention, the Bank points out that the Fielders agreed to proceed with the loan transaction after being told that the insurance company had the right to reject Mr. Fielder's application.[2] In addition, the Bank contends that the evidence was insufficient to submit the suppression count to the jury.[3] The plaintiff agrees that Snyder's representation was in the nature of a promise to perform an act in the future; however, she *Page 897 
argues that the evidence was sufficient to create a fact question as to whether Snyder had the intent to deceive at the time he made the promise to obtain the credit life insurance for Mr. Fielder. The plaintiff also maintains that a fact question was presented as to whether her reliance on Snyder's representation was justifiable. With regard to the suppression count, the plaintiff contends that the evidence was sufficient to show that the Bank was under a duty to disclose the fact that her husband's insurance application had been rejected; that the Bank intentionally suppressed that fact; and that she and her husband justifiably relied to their detriment on the Bank's silence. We agree.
The plaintiff's misrepresentation claim was predicated on an alleged promise to perform in the future. In Watters v.Lawrence County, 551 So.2d 1011, 1014 (Ala. 1989), this Court, quoting Hearing Systems, Inc. v. Chandler, 512 So.2d 84, 87
(Ala. 1987), discussed the nature of such a fraud claim as follows:
 " 'The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time . . . the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Company, 399 So.2d 288 (Ala. 1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). . . .' "
As previously noted, the evidence, viewed most favorably to the plaintiff, shows that Snyder, the senior vice-president of the Bank and a long-time financial advisor to the Fielders, with full knowledge of facts that should have placed a reasonable person on notice that Mr. Fielder was not insurable, promised the Fielders that he would obtain credit life insurance for Mr. Fielder. Snyder made this promise knowing that the Fielders did not want the loan unless the credit life insurance was obtained. Subsequently, after the loan had been closed and the Fielders had begun making payments, and after receiving notice of the insurance company's rejection of Mr. Fielder's application, neither Snyder nor anyone else associated with the Bank contacted the Fielders. Contrary to the Bank's contention, we conclude that the plaintiff presented substantial evidence that Snyder had an intent to deceive at the time he promised to obtain the credit life insurance and that the Fielders' reliance on Snyder's representation was justifiable under the circumstances, i.e., that a fact question was presented as to Snyder's intent and as to whether Snyder's representation, considering his senior status at the Bank and his long-time relationship with the Fielders, was "so patently and obviously false that [the Fielders] must have closed [their] eyes to avoid discovery of the truth." (See Johnson v.State Farm Ins. Co., 587 So.2d 974 (Ala. 1991), for this Court's most recent discussion of the justifiable reliance standard and its application in both commercial and consumer fraud cases.) We also conclude that there was clear and convincing evidence that the Bank had a duty, under the particular circumstances of this case, to inform the Fielders that Mr. Fielder's insurance application had been rejected; that the Bank intentionally suppressed that information; and that the Fielders justifiably relied on the Bank's silence to their detriment (e.g., the evidence showed that the Fielders could have taken immediate steps to sell some of their land and pay the balance due on the note). See Trio Broadcasters, Inc.v. Ward, 495 So.2d 621 (Ala. 1986), and Wilson v. Brown,496 So.2d 756 (Ala. 1986), for a general discussion of the elements of a cause of action for fraudulent suppression. The trial court did not err in submitting the misrepresentation and suppression claims to the jury and later in denying the Bank's *Page 898 
motion for a judgment notwithstanding the verdict as to those claims.[4]
With regard to the second issue, concerning whether the compensatory damages awarded under the misrepresentation count were excessive, the evidence shows that the Fielders did not receive the credit life insurance coverage for which they had applied. After thoroughly reviewing the record, we cannot say that the $42,000 in compensatory damages awarded by the jury under the misrepresentation count exceeded an amount that would compensate the plaintiff for the Bank's failure to obtain the credit life insurance. See Morris v. Westbay Auto Imports,Inc., 512 So.2d 1373 (Ala. 1987) (setting out the well-settled rule pertaining to the measure of damages applicable to fraudulent conduct or representations, to the effect that such damages will be fixed at an amount that would place the defrauded person in the position he would have occupied if the representations had been true). The trial court did not err in denying the Bank's motion for a remittitur or, in the alternative, for a new trial on this issue.
As to the third issue, the Bank argues that the verdict under the suppression count must be set aside because the jury's award of punitive damages was not accompanied by an award of either compensatory or nominal damages. The plaintiff contends that an award of compensatory damages was not necessary to support the jury's award of punitive damages. She argues that the evidence was sufficient to support a finding by the jury that she and her husband were damaged, at least nominally, as a result of the Bank's failure to disclose the fact that the insurance company had rejected Mr. Fielder's application and, therefore, that the punitive damages award under the suppression count is due to be affirmed. Again, we agree.
Injury to the plaintiff is an essential element of a cause of action for fraud. That injury may take the form of an injury or loss that would support an award of compensatory damages or it may take the form of a noncompensable violation of a legally protected right that would support only an award of nominal damages in recognition of the tort. Punitive damages may be awarded by the jury in a fraud action if the plaintiff makes a sufficient evidentiary showing that he has been injured as a result of the fraud and that the defendant's conduct warrants punishment. See, e.g., The Booth, Inc. v. Miles, 567 So.2d 1206
(Ala. 1990)[5]; Whitt v. Hulsey, 519 So.2d 901 (Ala. 1987);Coastal Concrete Co. v. Patterson, 503 So.2d 824 (Ala. 1987);Surrency v. Harbison, 489 So.2d 1097 (Ala. 1986); Gulf AtlanticLife Ins. Co. v. Barnes, 405 So.2d 916 (Ala. 1981); NationalStates Ins. Co. v. Jones, 393 So.2d 1361 (Ala. 1980); OldSouthern Life Ins. Co. v. Woodall, 348 So.2d 1377 (Ala. 1977);Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312
(1975); Rushing v. Hooper-McDonald, Inc., 293 Ala. 56,300 So.2d 94 (1974); Pihakis v. Cottrell, 286 Ala. 579,243 So.2d 685 (1971); Maring-Crawford *Page 899 Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970).
Citing Maring-Crawford Motor Co. v. Smith and Wood v. HolidayInns, Inc., 369 F. Supp. 82 (M.D.Ala. 1974) (interpreting Alabama law), the Bank argues that "an award of at least nominal damages is an unequivocal prerequisite to a verdict for punitive damages." Although the Bank did not refer to them in its brief, we also note that our independent research has revealed three treatises that categorize Alabama as a state requiring an award of at least nominal damages as a prerequisite to an award of punitive damages. See Annot., 40 A.L.R. 4th 11, Sufficiency of Showing of Actual Damages toSupport Award of Punitive Damages — Modern Cases (1985); L. Schlueter and K. Redden, Punitive Damages § 6.1(D)(4)(c) (2d ed. 1989); 22 Am.Jur.2d Damages § 743 (1988). These treatises cite either Maring-Crawford Motor Co. v. Smith; Mid-State Homesv. Johnson; St. Paul Fire Marine Ins. Co. v. Anderson,358 So.2d 151 (Ala.Civ.App. 1977), judgment reversed, ProctorAgency, Inc. v. Anderson, 358 So.2d 164 (Ala. 1978), on remand,358 So.2d 167 (Ala.Civ.App. 1978) (relying onMaring-Crawford); or Wood v. Holiday Inns, Inc., or some combination of those cases, in support of their interpretations of Alabama law. In Wood v. Holiday Inns, Inc., the federal district court, citing Maring-Crawford; Burk v. Knott,20 Ala. App. 316, 101 So. 811 (1924); and Kelite Products, Inc. v.Binzel, 224 F.2d 131 (5th Cir. 1955), quoted the following fromMaring-Crawford in support of its conclusion that Alabama has "an unequivocal requirement of [an award of] at least nominal damages as a prerequisite to a verdict for punitive damages":
 " ' "While some jurisdictions have held that compensatory damages are essential to support an award of exemplary or punitive damages, it is the doctrine of our cases, as well as that of a substantial number of other states, that an award of nominal damages authorizes, in the discretion of the trier of fact, the award of punitive damages where legal malice, willfulness, and a reckless disregard accompanies the invasion of the rights of another. It would appear in such situations that 'nominal damages' are considered within the context of 'actual damages.' Louisville Nashville R.R. Co. v. Smith, 141 Ala. 335, 37 So. 490; Goodson v. Stewart, et al., 154 Ala. 660, 46 So. 239; Alabama Great So. R.R. Co. v. Sellers, 93 Ala. 9, 9 So. 375; Burk v. Knott, 20 Ala. App. 316, 101 So. 811." ' "
369 F. Supp. at 91. See, also, Walker v. Cleary PetroleumCorp., 421 So.2d 85 (Ala. 1982), where the following statement was made:
 "In addition, the rule in this state is that a valid award of nominal damages will, in a proper case, support an additional award of punitive damages. See Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975); Rushing v. Hooper-McDonald, Inc., 293 Ala. 56, 300 So.2d 94
(1974); Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970); Ramos v. Fell, 272 Ala. 53, 128 So.2d 481 (1961)."
After a careful review of our cases, including the ones mentioned above, we can find no instance where this Court has held that an award of at least nominal damages is a prerequisite to an award of punitive damages. Although this Court has held, as evidenced by the quotes above, that an award of at least nominal damages will support an award of punitive damages, we do not construe those holdings as requiring an award of at least nominal damages as a prerequisite to an award of punitive damages. To the contrary, a survey of our cases reveals that the focus of this Court has been on the sufficiency of the evidence to support a finding by the jury that the plaintiff has been injured, at least nominally, and that the defendant deserves to be punished via an award of punitive damages. It would certainly be illogical, in a case where the jury was properly charged that it could punish the defendant for aggravated misconduct that caused the plaintiff injury and where the evidence supported an award of punitive damages, for the defendant to be freed of responsibility for that aggravated misconduct by the fortuitous circumstance that the jury failed to *Page 900 
award either compensatory or nominal damages because the plaintiff failed to prove that he was entitled to compensatory damages and the jury was not charged on or otherwise did not award nominal damages; the plaintiff's injury was incapable of precise monetary measurement and the jury was not charged on or otherwise did not award nominal damages; the plaintiff was fully compensated as a result of a pro tanto settlement with a joint tort-feasor and the jury was not charged on or otherwise did not award nominal damages, see, e.g., The Booth, Inc. v.Miles; or the plaintiff was fully compensated for his injury under a separate tort made the basis of a separate count of the complaint and the jury was not charged on or otherwise did not award nominal damages. In any event, because there does appear to be confusion in this regard, we take this opportunity to specifically hold that an award of compensatory or nominal damages is not a prerequisite to an award of punitive damages. When presented with a motion to set aside a verdict awarding punitive damages only, the appropriate inquiry for the trial court in a fraud case is not whether there has been an award of compensatory or nominal damages but, instead, whether the evidence is sufficient to support a finding by the jury that the plaintiff was injured, at least nominally, by the defendant's wrongful actions and that the defendant's conduct is deserving of punishment. Although, as previously noted, we do not construe Maring-Crawford and Mid-State Homes as being inconsistent with our holding in this case, some legal commentators and at least one federal district court in Alabama have construed those cases as requiring an award of compensatory or nominal damages as a prerequisite to an award of punitive damages in this state. Therefore, to eliminate any further confusion that may be caused by the wording of these cases, we hereby expressly declare that Maring-Crawford andMid-State Homes are not inconsistent with our holding in this case.
In the present case, the trial court instructed the jury that it had to consider whether the plaintiff was entitled to an award of compensatory damages before it considered whether the Bank should be punished. The trial court did not instruct the jury with respect to nominal damages. As previously noted, the jury initially returned a verdict for the plaintiff under the suppression count and awarded $42,000 in compensatory damages and $20,000 in punitive damages. After discussing that verdict with the attorneys, the trial court told the jury that it could not compensate the plaintiff under both the misrepresentation count and the suppression count and it instructed the jury to deliberate further. The jury later returned a verdict under the suppression count for zero compensatory damages and $62,000 in punitive damages. The original verdict awarding $42,000 in compensatory damages and no punitive damages under the misrepresentation count was left intact. The evidence was sufficient to submit the suppression count to the jury, and the record clearly indicates that the jury found that the Fielders were injured as a result of the Bank's intentional failure to disclose the insurance company's rejection of Mr. Fielder's application, and that it found that the Bank's conduct warranted an award of punitive damages. It is apparent that the jury's failure to award either compensatory or nominal damages under the suppression count was the result of the trial court's instruction that the plaintiff could not be compensated twice and the court's failure to instruct that nominal damages could be awarded under that count. Accordingly, the trial court did not err in refusing to set aside the verdict awarding punitive damages under the suppression count on the ground that the jury did not award either compensatory or nominal damages under that count.
For the foregoing reasons, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., dissents.
[1] Whether the Fielders participated with Snyder in an attempt to perpetrate a fraud on the insurance company is not an issue on this appeal.
[2] The basis for the plaintiff's misrepresentation claim was her allegation that the Bank had failed to perform its promise to obtain credit life insurance for Mr. Fielder. Although as a general rule an innocent or reckless misrepresentation cannot support a fraud action where that misrepresentation relates to a future act, Benetton Services Corp. v. Benedot, Inc.,551 So.2d 295 (Ala. 1989), the jury was nonetheless charged in this case, without objection from the Bank, on the law of innocent and reckless misrepresentation as it related to the alleged promise to obtain the credit life insurance. Therefore, under the "law of the case doctrine" the jury could have returned a verdict for the plaintiff under the misrepresentation count, even though it found only an innocent or reckless misrepresentation. See Blumberg v. Touche Ross Co.,514 So.2d 922 (Ala. 1987). Whether the jury's finding in favor of the plaintiff under the misrepresentation count and its award of compensatory damages under that count were inconsistent with the jury's finding that the Bank "did not consciously or deliberately engage in fraud" is not an issue on this appeal.
[3] Whether the plaintiff's claims for misrepresentation and suppression that were made in her representative capacity should have been dismissed on the ground that Mr. Fielder's causes of action for fraud failed to survive his death is not an issue on this appeal. See Ala. Code 1975, § 6-5-462; see, also, Davis v. Southern United Life Ins. Co., 494 So.2d 48
(Ala. 1986).
[4] This suit was not pending on June 11, 1987; therefore, the applicable standard of review with respect to the sufficiency of the evidence under the misrepresentation count is the "substantial evidence" rule. See Ala. Code 1975, § 12-21-12. However, because the plaintiffs fraud claims accrued after June 11, 1987, and because punitive damages were awarded under the suppression count, the applicable standard of review with respect to the sufficiency of the evidence under that count is the "clear and convincing evidence" rule. See Ala. Code 1975, §6-11-20; see, also, Berry v. Fife, 590 So.2d 884 (Ala. 1991).
[5] In The Booth, Inc. v. Miles, this Court held that in an action pursuant to Ala. Code 1975, § 6-5-71 (the Dram Shop Act), when there is sufficient evidence of actual injury to support an award of compensatory damages a specific award of compensatory or actual damages is not required in order to support an award of punitive damages. Although The Booth, Inc. v. Miles, involved an interpretation of the Dram Shop Act, this Court's holding in that case was based, at least in part, on Harris v.American General Life Ins. Co. of Delaware, 202 Mont. 393,658 P.2d 1089 (1983). In Harris, which did not involve an interpretation of a dram shop act, the Montana Supreme Court held that a sufficient evidentiary showing was made that the plaintiff had been damaged, at least nominally, and that the defendant's conduct warranted punishment, and that that showing was sufficient to support the punitive damages award. *Page 901