605 So.2d 1193 (1992)
CATERPILLAR, INC.
v.
Jimmie A. HIGHTOWER, Jr., and Corene Hall Hightower.
1901465.
Supreme Court of Alabama.
August 7, 1992.
*1194 James E. Simpson, Stephen A. Rowe and E. Berton Spence of Lange, Simpson, Robinson & Somerville, Birmingham, and Phillip E. Adams, Jr. of Walker, Hill, Adams, Umbach & Meadows, Opelika, for appellant.
Joseph L. Dean, Jr., Opelika, for appellees.
ADAMS, Justice.
Caterpillar, Inc. ("Caterpillar"), appeals from a judgment entered on a jury verdict in favor of Jimmie and Corene Hightower in their action against Caterpillar alleging injury as the result of a defective product. We affirm.
On September 28, 1987, Mr. Hightower was operating a Model 518 "skidder" for his employer, Dudley Land and Timber Company ("Dudley").[1] The skidder was manufactured in 1975 by Caterpillar: it had no doors or other mechanisms to enclose the sides of the operator's compartment. While operating the skidder in thick, partially felled timber, Mr. Hightower was severely injured when the motion of the skidder caused a broken tree trunk to protrude into the operator's compartment through one of the open sides of the skidder. Hightower's injury eventually required the amputation of a major portion of his right foot.
On November 16, 1988, the Hightowers sued Caterpillar on various product liability theories. The plaintiffs alleged that the skidder had been defectively designed, manufactured, and sold in that it was manufactured and distributed without doors or comparable protection for the sides of the operator's compartment, although, they contended, Caterpillar was aware of the substantial probability of injuries to operators due to the absence of side protection. During the trial, the jury was informed that Jimmie Hightower had already received $61,988.67 as a result of an agreement between Hightower and Dudley settling Hightower's worker's compensation claims. The case was submitted to the jury under theories of (1) negligence, (2) wantonness, and (3) liability under the Alabama Extended Manufacturer's Liability Doctrine. On March 18, 1991, the jury returned the following verdict: "We, the jury, find the issues in favor of the plaintiff and against the defendant and assess the plaintiff's damages as follows: punitive damages $250,000. It is our intention to assess total damages to the plaintiff at $250,000."
On appeal, Caterpillar first contends that an award of at least nominal compensatory damages is a prerequisite to an award of punitive damages. For this proposition, Caterpillar cites O.K. Bonding Co. v. Milton, 579 So.2d 602 (Ala.1991). In Milton, the trial court entered separate judgments on jury verdicts awarding a total of $225,000 in compensatory and punitive damages in claims by nine plaintiffs alleging assault and trespass. We reversed the judgment entered on one of the verdicts awarding $15,000 in punitive damages and no compensatory damages because we concluded *1195 that, as to that plaintiff, the award was not "amply supported by the evidence." Id. at 604 (emphasis added).
More recently, we held that "an award of compensatory damages was not necessary to support the jury's award of punitive damages," First Bank of Boaz v. Fielder, 590 So.2d 893, 898 (Ala.1991), where the record clearly supported the jury's finding that the plaintiff had been injured by the defendant's fraudulent conduct. Id. at 900. Following an extensive case-law analysis, we explained:
"It would certainly be illogical, in a case where the jury was properly charged that it could punish the defendant for aggravated misconduct that caused the plaintiff injury and where the evidence supported an award of punitive damages, for the defendant to be freed of responsibility for that aggravated misconduct by the fortuitous circumstance that the jury failed to award either compensatory or nominal damages because the plaintiff failed to prove that he was entitled to compensatory damages and the jury was not charged on or otherwise did not award nominal damages; the plaintiff's injury was incapable of precise monetary measurement and the jury was not charged on or otherwise did not award nominal damages; the plaintiff was fully compensated as a result of a pro tanto settlement with a joint tort-feasor and the jury was not charged on or otherwise did not award nominal damages, see, e.g., The Booth, Inc. v. Miles [, 567 So.2d 1206 (Ala.1990) ]; or the plaintiff was fully compensated for his injury under a separate tort made the basis of a separate count of the complaint and the jury was not charged on or otherwise did not award nominal damages. In any event, because there does appear to be confusion in this regard, we take this opportunity to specifically hold that an award of compensatory or nominal damages is not a prerequisite to an award of punitive damages. When presented with a motion to set aside a verdict awarding punitive damages only, the appropriate inquiry for the trial court ... is not whether there has been an award of compensatory or nominal damages but, instead, whether the evidence is sufficient to support a finding by the jury that the plaintiff was injured, at least nominally, by the defendant's wrongful actions and that the defendant's conduct is deserving of punishment."
Fielder, 590 So.2d at 899-900 (emphasis in original). In this case, the fact of the plaintiff's substantial injury was clear and uncontroverted. Consequently, it is no defense to the award of punitive damages that the jury did not award compensatory damages.
Caterpillar next contends that the plaintiff failed to produce evidence demonstrating Caterpillar's knowledge of potential injuries to skidder operators from external protrusions; therefore, it contends, there was no evidence of wantonness upon which to base an award of punitive damages. We disagree. Information and literature indicating that operators of skidders such as the Model 518 were subject to injuries by trees and other objects entering the operator's compartment were disseminated throughout the industry, and to Caterpillar, specifically. For example, 29 C.F.R. § 1910.266(d)(2) (1988), which was effective as early as 1972, provides:
"§ 1910.266 Pulpwood Logging.
"....
"(d) Equipment protective devices stationary and mobile equipment....
"(2) Protective canopy. A protective canopy shall be provided for the operator of mobile equipment. It shall be so constructed as to protect the operator from injury due to falling trees or limbs, saplings or branches which might enter the compartment side areas, and snapping winch lines or other objects.
"....
"(vi) Open mesh shall be extended forward as far as possible from the rear corners of the cab sides so as to give the maximum protection against obstacles, branches, etc., entering the cab area." *1196 At least one other manufacturer of skidders comparable to the Model 518 provided side doors as standard equipment in 1975.
Even more significantly, Peter Sidles, Jr., who was Caterpillar's design engineer during the years immediately preceding the manufacture of the skidder in which Hightower was injured, also occupied during those years a position on a subcommittee of the Society of Automotive Engineers ("SAE"), an organization whose purpose, inter alia, is to "advance the knowledge of the ... standards and engineering practices connected with the ... design ... of self-propelled machines" and to "develop technical and scientific reports, including engineering standards and recommended practices, in connection with the development, design, construction and use of such mechanisms." During this time, the subcommittee solicited information and statistics from various sources, including worker's compensation boards, regarding injuries to operators of skidders and comparable logging equipment. In 1975, the subcommittee recommended the complete enclosure of the operator's compartment in order to "minimize the possibility of operator injury from hazards such as whipping saplings, branches, jill-poking (sphere-like objects) and snapping winch lines." Operator Protective Structure Performance Criteria for Certain Forestry Equipment: SAE J1084 ("J1084"). Moreover, Mr. Sidles conceded that he and "most of the members of the committee" had observed damage to skidders and comparable machinery due to hazards of the nature described in J1084, and that steel plates were placed on the sides of the engine compartments of Caterpillar's skidders in order to protect the engine from such hazards.
These and similar examples in the record provide clear and convincing evidence from which the jury could have concluded that although Caterpillar knew of the substantial likelihood of injuries from intrusions into the operator compartment of its Model 518 skidder, it refused to take appropriate preventive action. See Roberts v. Brown, 384 So.2d 1047 (Ala.1980). Under these facts, we cannot say that the verdict was clearly "wrong and unjust." Campbell v. Burns, 512 So.2d 1341 (Ala.1987). Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX, ALMON and STEAGALL, JJ., dissent.
HOUSTON, Justice (concurring in the result).
See my opinion concurring in part and concurring in the result in part in Shoals Ford, Inc. v. McKinney, 605 So.2d 1197 (Ala.1992).
ALMON, Justice (dissenting).
I do not agree that First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991), and O.K. Bonding Co. v. Milton, 579 So.2d 602 (Ala.1991), can be reconciled. I think the correct rule is that a verdict that awards zero compensatory damages and yet awards punitive damages is inconsistent as a matter of law and that no proper judgment can be entered thereon. Thus, I think that First Bank of Boaz is incorrect and should be overruled, and that the judgment in this case should be reversed.
In this case the Court makes the following reference to O.K. Bonding: "as to that plaintiff, the award was not `amply supported by the evidence.' Id. at 604 (emphasis added)." Supra, at 1195. In doing so, the Court erroneously cites to the resolution of one issue to describe the resolution of another issue. The full context of this quotation is as follows:
"Second, the appellants argue, in a general manner, that the amount of punitive damages awarded by the jury was excessive and should have been reduced by the trial court. We do not agree. The security of an individual in his home is one of the foremost concerns of the law. Unlawful, armed intrusions into homes occupied by women and children are indefensible, and it is well within the province of juries to determine that the *1197 parties responsible for such egregious breaches of the peace deserve to be rigorously punished. After reviewing the record, we find that the awards of damages, except for the punitive damages awarded to one of the plaintiffs, were amply supported by the evidence and are due to be affirmed.
"However, the jury's verdict on Justin Earl Hyde's trespass claim cannot be upheld. The jury assessed punitive damages of $15,000 for Justin, but awarded him `$0' in nominal or compensatory damages. The appellants filed a post-trial motion challenging the award of punitive damages to Justin. It is settled that punitive damages cannot be awarded unless the jury also awards nominal or compensatory damages. Therefore, the portion of the judgment awarding punitive damages to Justin ... must be reversed. Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975)."
579 So.2d at 604 (emphasis added).
Although the phrase emphasized in the first paragraph of this quotation from O.K. Bonding may appear to say that the punitive damages award to Justin Earl Hyde was not supported by the evidence, it clearly does not say that when read in context. The only basis given in the second paragraph for reversing the award to Justin is the fact that the jury awarded $0 compensatory damages to him. Nothing in the opinion suggests that the facts supported punitive damages for Justin any less than they did for the other plaintiffs. Thus, O.K. Bonding squarely held that an award of punitive damages cannot be sustained without an award of compensatory damages, and the majority's attempted distinction between O.K. Bonding and First Bank of Boaz is unsound.
For the reasons why I think that the rule stated in O.K. Bonding is correct and that First Bank of Boaz should be overruled, see my dissent in Shoals Ford, Inc. v. McKinney, 605 So.2d 1197 (Ala.1992).
This case is not an egregious case of juror error, because of the clear evidence of injury and because of the confusion engendered by the worker's compensation settlement. However, the verdict was at least inconsistent in form and should not have been accepted. Although the transcript shows that the trial court orally read the verdict as it is quoted in the majority opinion, the verdict as written in the case action summary sheet reads:
"We, the jury, find the issues in favor of the Plaintiff and against the Defendant and assess the Plaintiff's damages as follows: Past Damages -0-; Future Damages -0-; Punitive Damages $250,000.00. It is our intention to assess total damages to the Plaintiff at $250,000."
This inconsistency was a ground of Caterpillar's motion for a new trial. Therefore, I would overrule First Bank of Boaz v. Fielder, 590 So.2d 893 (Ala.1991), reverse the judgment, and remand the cause for a new trial.
MADDOX, J., concurs.
STEAGALL, Justice (dissenting).
I respectfully dissent based on the position I stated in my dissent in The Booth, Inc. v. Miles, 567 So.2d 1206 (Ala.1990).
NOTES
[1] The Model 518 skidder is a rubber-wheeled tractor used in logging operations.