**Mrs. Beatrice SMITH, Plaintiff-Appellee,**

v.

**SOUTHERN AIRWAYS, INC.,
Defendant-Appellant.**

**No. 75–3630.**

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1977.

William E. Suddath, Jr., Thomas C. Gerity, Jackson, Miss., for defendant-appellant.

Charles C. Jacobs, Jr., Cleveland, Miss., Thomas H. Hadley, Batesville, Miss., M. Collins Bailey, William E. Trusty, Batesville, Miss., for plaintiff-appellee.

Before WISDOM and GEE, Circuit Judges, and BOOTLE,* District Judge.

GEE, Circuit Judge:

This diversity case arises from a fall suffered by plaintiff Beatrice Smith while leaving one of defendant's aircraft at the end of her flight on it as a passenger.

Mrs. Smith, an experienced air traveler aged 79 who was returning from a family visit, fell from the upper portion of the air stairs of a DC–9 aircraft in Greenville, Mississippi, about nine o'clock at night. As a result, she suffered a broken leg and other lesser but painful injuries, together with ensuing complications. At trial, her theories of airline negligence were three: that the air stairs from which she fell were loose and shaking because of improper maintenance, that the stairs were inadequately lighted, and that she should have been given special assistance in going down the stairs. At the conclusion of a lengthy and hard-fought trial, the court instructed the jury generally on all three theories of recovery; and it returned a general verdict for sizeable damages in Mrs. Smith's favor. Defendant's attorneys unsuccessfully objected to the court's instructions on the theories of inadequate lighting and insufficient assistance. Because we cannot tell on what theory or theories the jury proceeded in arriving at its verdict, if any of the three submitted was improper for submission the verdict cannot stand. *Lyle v. Bentley*, 406 F.2d 325 (5th Cir. 1969). The evidence on all three left somewhat to be desired; [1] however, we conclude that it clearly failed

---

* Senior District Judge of the Middle District of Georgia, sitting by designation.

1. It was undisputed that Mrs. Smith refused two offers of assistance, one from a fellow passenger and one from the stewardess at the exit door. And after considerable testimony from an expert offered by her that the stairs were loose because of play in a hinge at their upper juncture with the aircraft, it became apparent that no such hinge existed.

to support submission of the "inadequate lighting" theory and that therefore the judgment must be reversed and the cause remanded for a new trial.

It was Mrs. Smith's testimony that she was thrown into the air from the stairs, despite her stable stance and firm grip on both handrails, by vibrations produced in the stairs when an obese 320-pound passenger bounced or gambolled down the bottom three or four stairs.[2] Had the stairs been kept in better repair, she believed, or had she been furnished assistance in debarking, she would not have fallen.

The most careful reading of Mrs. Smith's testimony discloses not the slightest indication that the lighting caused her fall or had anything to do with it. She did describe the steps as being not "very brightly illuminated." And two other witnesses put on by Mrs. Smith from among the passengers who debarked that night described the lighting as poor.[3] But her own testimony about what caused her fall—testimony about a matter peculiarly within her own knowledge—not only failed to assign it to an inability to see the stairs or a stumble but squarely ruled out such things as causes. This testimony was undisputed; indeed, it was the sole testimony offered by anyone about how or why Mrs. Smith fell, and while the jury was free to disbelieve it, it was not free to determine that the accident happened in some other manner or had some different cause than that advanced by the only evidence they heard on the subject.

Mrs. Smith's testimony about how the accident *did* happen is fairly represented by the following excerpts:

[On direct] The first step I took after I got off the platform, I thought, "Well, what makes these steps jiggle so?" I thought, "There must be a great deal of weight." I thought, "Oh, there probably is." I knew this heavy man was ahead of me someplace. I thought, "Well, they must have a lot of people on this plane that are—I mean heavy people going down the steps." Because every step there was this jerk, there was the vibration. And I hung on and I thought, "Well, this is very funny." And then I would carefully look and see, and I didn't go fast, because I am always very careful about it and I've always been afraid of falling. And I wasn't in a hurry, I wasn't in that much of a hurry. So I looked again and got ready to take the next step, and there was this vibration. Just awful. I had never in all my experience been on anything like it. And I thought, "Well, I don't know, it's just very heavy business here for some reason or another." I couldn't understand it. Well, the third step—I think it was the third step I took, something just seemed to give, I don't know what, it was just awful. And my hands and everything flew, and I just flew right off of the—right over the—down the gangplank affair in the air.

\* \* \* \* \* \*

Q. . . . . When you fell, would you tell us, please ma'am what, if anything, caused you to fall down those stairs?

A. Well, you could not walk down the stairs properly. Every step vibrated, shook.

Q. Why were they vibrating, Mrs. Smith?

A. I don't know, unless it was the weight of the people on the steps. And this big man, I know, was on the steps. And I never went down anything—you just could not walk down those steps without this—every—it was just rickety, it is all I can think of.

\* \* \* \* \* \*

[And on cross]

Q. And then you went down one more step.

---

**2.** The passenger, a towboat captain, testified that he did so because he was glad to be home in Greenville after an extended voyage.

**3.** One, Mrs. McGowan, called them "the worst lighted steps I have ever seen." Other witnesses testified that all lights were on; and an expert offered by defendant described tests run by him with a light meter indicating that lighting levels complied with exacting FAA standards.

A. That's right.

Q. And it shook again.

A. That's right.

Q. Then you waited again.

A. That's right, I waited.

Q. And you've still got hold of both handrails?

A. I certainly did. I was holding on for dear life.

Q. And I believe you also said you were hanging back a little bit so the man in front of you—you could see where you were going, see the next step.

A. I certainly did.

Q. So you could see the next step down as you took the next step, is that right?

A. That's right.

Q. Okay. You took your first step and you waited and you took your next step and it shook and you waited and then you took another, is that right?

A. That's right. The third step. And the third step, there was such a jolt and jar and it just—my hands and everything just flew right off the rail. I was just thrown right up, the whole business, and then I flew.

She was equally positive about what did *not* cause it:

[On cross]

Q. You say something about it was a dark night. Now, actually, you could see where you were going that night, could you not, Mrs. Smith?

A. Well, I could see, but not very—they weren't very brightly-illuminated steps, I can tell you that. But I could see the steps, yes, I could see the steps.

Q. The cause of your fall had nothing to do with not being able to see the steps, I take it.

A. I could see each step as I took the step. It wasn't that I couldn't see the step.

[And on direct]

Q. Did you damage your shoes in any way when you fell?

A. Well no. You can see there's nothing ripped on them, the heel wasn't—they just went with me when I flew, that's all. They were with me. I did not stumble. It was the jerking. I did not stumble.

Such evidence from the sole witness who testified about the cause of her fall, Mrs. Smith herself, rules out inadequate lighting as a cause of her fall. It should not have been submitted to the jury. And since we cannot tell but that it may have been the basis of the verdict, the judgment must be

REVERSED and REMANDED.