John **RICHARDS**, as Conservator, etc., Plaintiff–Appellee,

v.

**MICHELIN TIRE CORP.,** Defendant–Appellant,

**The Budd Company; Ford Motor Co.,** Defendants.

No. 92–6547.

United States Court of Appeals, Eleventh Circuit.

May 31, 1994.

---

Wade B. Perry, Mobile, AL, Daryll Love, Robert P. Monyak, Allen Willingham, Love & Willingham, Atlanta, GA, Eric H. Holtzman, Law Office of Eric H. Holtzman, Hauppauge, NY, for appellant.

Andrew T. Citrin, James A. Yance, Michael A. Worel, Cunningham, Bounds, Yance, Crowder & Brown, Mobile, AL, for appellee.

Malcolm E. Wheeler, Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, CO, amicus.

Before BLACK, Circuit Judge, and JOHNSON and HENDERSON, Senior Circuit Judges.

JOHNSON, Senior Circuit Judge:

Plaintiff-Appellee John Richards, as conservator and guardian of the estate of Leonard Richards,[1] brought this action against Michelin Tire Corporation ("Appellant") for injuries sustained from the explosion of a 16-inch Michelin tire that Richards was attempting to mount onto a 16.5-inch rim. A jury awarded $161,475 in compensatory damages and $5,000,000 in punitive damages. Appellant appeals the district court's denial of its motion for judgment as a matter of law ("JNOV" or "judgment notwithstanding the verdict") or, alternatively, for a new trial. We vacate the district court's order and grant Appellant's motion for JNOV on Richards' wantonness cause of action. With respect to Richards' negligence cause of action, Appellant is entitled to a new trial.

## I. STATEMENT OF THE CASE

A. *Background Facts*

1. Tire Mounting

Mounting refers to the process of placing the tire onto a metal rim. The first step in the process involves matching the tire to the rim. Matching is extremely important as mismatches can result in explosions, as occurred in this case. Once matched, the tire is fitted around the rim and inflated. During inflation, the tire will "seat" itself against the rim. Once seated, the tire may be inflated to its operating or maximum inflation level. While mounting the tire, the person doing the mounting should use a tire cage or some other protective device to insure that he or she will not be harmed in the event of a mishap. The mounter should not stand near the tire to monitor air pressure during the mounting process.

1. Although the suit was filed by John Richards on behalf of Leonard Richards, this opinion

### 2. Awareness of tire/rim mismatches [2]

Beginning in 1975, the Tire Guide, a publication of the Tire and Rim Association, printed warnings about the danger of mismatches. Appellant first learned of mismatch dangers in 1976. Between 1976 and 1982, Appellant was sued for at least three mismatch accidents. In 1982, Ford Motor Company ("Ford") switched its trucks to 16–inch tires and 16–inch rims from 16.5 inches. Concerned that mismatches would occur as consumers attempted to put new tires and rims onto the older trucks, Ford demanded that its tire suppliers provide warnings of the mismatch hazard on the sidewalls of their 16–inch tires. The exact wording of the warning was up to each individual supplier. With Ford's consent, most of the tire manufacturers added language stating "warning" or "danger." Appellant initially denied Ford's request for a warning because it felt that it was unnecessary [3] and could start a dangerous legal precedent. Ultimately Appellant acquiesced and, with Ford's approval, Appellant added the following language to its tires' sidewalls: "Mount only on approved 16–inch rims." [4] Although Appellant stated that this warning would be added to its tire warranty booklets, it did not do so.

### 3. The accident

Leonard Richards was a 30 year-old farmhand employed at Driskell Farms in Grand Bay, Alabama. Although his duties included changing tires, his only training in this area occurred on the job. On May 4, 1987, Richards' supervisor, William B. Driskell, asked him to change a flat trailer tire, selecting a 16–inch Michelin tubeless radial tire for the job.[5] While attempting to change the tire, Richards had problems with the old metal rim and was told by Driskell to discard it and get a "16–inch wheel" from the shed.

Richards went to the shed and retrieved a 16.5–inch rim instead of a 16–inch rim. The 16.5–inch size was legibly marked on the rim. Because he continued to have problems changing the tire, Driskell told him to finish the job the next day. The following morning, Richards again tried to mount the 16–inch tire on the 16.5–inch rim. He and a co-worker attempted to mount the tire onto the rim by inserting an inner tube despite the tire's "tubeless" notation and three statements on the inner tube reading "Not For Use in Radial Tires." Further, the inner tube was marked in various locations with its 16–inch size.

In attempting to mount the tire, Richards began to inflate it to 70–75 pounds of pressure, which was ten pounds over its maximum capacity. Although Driskell Farms owned a tire cage, Richards was not using it.[6] After inflating the tire, Richards noticed that it had not yet mounted, stating "if seventy or seventy-five pounds won't push it out, I don't

makes no such distinction.

**2.** By mismatch, we refer to the overinflation of a 16–inch tire on a 16.5–inch rim.

**3.** Apparently, this same view was held by the federal Department of Transportation. In 1991, the National Highway Traffic Safety Administration ("NHTSA") declined to adopt more specific marking requirements for tires because NHTSA's review "of its files indicates that there is little evidence of injuries or fatalities attributable to tire and rim mismatch that would be alleviated by the proposed changes to the rim labeling requirements.... Accordingly, based on current information and analysis, the agency concludes that there are insufficient safety benefits to warrant further rulemaking at this time." 56 Fed. Reg. 41814, 41814 (August 23, 1991).

**4.** This language was similar to the warning that Ford stated it would be adding to its owner's manuals: "For 16 inch replacement tires mount only on 16 inch rims, and when replacing with truck type radial tires use only with wheels approved for radial tires."

**5.** The Michelin tire involved in this case was a 16–inch light truck radial tire manufactured in 1985. It is uncontroverted that the tire at issue was properly manufactured as designed and that it met or exceeded all federal regulatory requirements. The tire's sidewall was marked "LT 235/85 R16," indicating that it was a 16–inch radial tire. The sidewall also contained the following statements, "MOUNT ONLY ON APPROVED 16–INCH RIMS" and "tubeless." Furthermore, in accordance with federal regulations, the tire was embossed with notations signifying that its maximum inflation pressure was 65 pounds per square inch ("p.s.i."). *See* 49 C.F.R. § 571.119.S6.5 (1992) (specifying tire markings).

**6.** Richards had never been told to use the tire cage when changing single-rim tires, such as the Michelin tire herein.

know what will." Some ten seconds later, as he stood above the tire, it exploded, causing him severe physical harm and brain damage.

### B. *Procedural History*

On September 22, 1988, Richards sued Appellant and The Budd Company ("Budd"), the rim manufacturer, in an Alabama trial court for injuries incurred while changing the tire. In December of 1988, the case was removed to the federal district court for reasons of diversity jurisdiction, and Ford was added as an additional defendant. Ford and Budd then settled with Richards for $2,000,-000.

Richards proceeded to trial with two separate causes of action against Appellant: negligence and wantonness. In his first cause of action, Richards alleged that he was injured because of Appellant's negligence in: (a) designing, manufacturing, assembling, selling and supplying the tire when it knew or had reason to know that the tire was not fit for its intended uses ("design defect claim" or "design claim") [7] and (b) failing to place proper warnings on its tires regarding mismatches ("warning claim"). Richards alleged the same design and warning claims in support of his wantonness cause of action.

After a two week trial, the jury found by special verdict forms that: (1) Appellant was negligent in either designing, manufacturing, and selling the tire or by failing to provide adequate warnings and instructions, and such negligence was the proximate cause of Richards' danger; (2) Appellant failed to show Richards was contributorily negligent; and (3) Appellant was wanton in either designing, manufacturing, and selling the tire or by failing to warn and instruct Richards, and such wantonness was the proximate cause of Richards' damage. The jury returned a verdict against Appellant for $161,475 in compensatory damages and $5 million in punitive

damages.[8] After setting off the monies received from Ford and Budd, judgment was entered against Appellant for $3,161,475. On March 24, 1992, Appellant filed a renewed motion for JNOV and alternative motion for a new trial, which was denied.

### C. *Standard of Review*

Denial of a motion for JNOV is a question of law which we review *de novo*. *Pinnacle Port Community Ass'n v. Orenstein*, 952 F.2d 375, 378 (11th Cir.1992). In conducting our review, we consider all evidence in the light most favorable to the nonmoving party. *Id.* at 378–79; *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1469 (11th Cir.1991). Reversal of an order denying a motion for JNOV is proper only if the facts and inferences are such that reasonable jurors could not arrive at a contrary verdict. *Davis v. Locke*, 936 F.2d 1208, 1212 (11th Cir.1991). To grant a motion for a new trial, the district court must find the verdict contrary to the great weight of the evidence; we will reverse the denial of a motion for a new trial only for an abuse of discretion. *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1307 (11th Cir.1984).

## II. ISSUES PRESENTED [9]

A. With respect to either cause of action, is Appellant entitled to JNOV or a new trial if it establishes that the evidence is insufficient to support the verdict under either the warning claim or the design defect claim?

B. Did the district court err in denying Appellant's motion for JNOV or a new trial?

## III. ANALYSIS

### A. *Sufficiency of the evidence*

◼ Appellant claims that the evidence is insufficient to support the jury's verdict and therefore the district court erred in denying its motion for JNOV or a new trial. Rich-

---

**7.** The design defect claim involved Appellant's bead wires, which are wires in the tire that distribute weight along the tire. Richards maintained that the wires were not built strongly enough to withstand overinflation and mismatching.

**8.** The jury awarded $161,475 in compensatory damages for both the negligence and wantonness

causes of action. The court held that Richards was not entitled to have them added together.

**9.** Appellant also claims that the trial court gave several improper jury instructions and that it erroneously limited or excluded certain testimony. We find these claims to be without merit and decline to discuss them further.

ards disputes this assertion, maintaining that Appellant is not entitled to reversal on either his negligence or wantonness causes of action unless it demonstrates the invalidity of both the design and warning claims with respect to each cause of action (the "two-issue" rule). For example, with respect to negligence, Richards maintains that for Appellant to obtain JNOV or a new trial, Appellant must show that the evidence is insufficient to support the verdict under both the design and warning claims. Richards' argument is premised on the fact that he lumped the design and warning claims into the same cause of action in his complaint. In Count II of his second amended complaint, he alleged that Appellant was negligent either in designing the tire or by failing to warn about mismatches. He made the same allegations in Count III with respect to wantonness. Similarly, the interrogatories accompanying the verdict distinguished between wantonness and negligence but they did not separate the design claim from the warning claim. The interrogatories simply asked if Appellant was negligent (or wanton) in either its design of the tire or its failure to warn.[10] Because the design and warning claims were united,

10. The verdict forms read in relevant part as follows:

QUESTION NO. I:  Re: Negligence Claims

Has it been established by a preponderance of the evidence that the defendant Michelin Tire Corporation violated a duty and that Leonard Richards was injured as a result of the breach of the defendant Michelin Tire Corporation's duty by:.

YES    NO    Check "YES" or "NO" as to each claim

X      —     CLAIM 1: Was the defendant negligent in design, manufacture and sale, supply or distribution of the tire, OR Negligently failing to provide adequate warnings and instructions.

If you answered "NO," STOP· AND FOREPERSON SIGN.
If you answered "YES," go to Question II.

QUESTION NO. II:  Re: Negligence Claims

If you found that the defendant was negligent, do you find that such negligence was a proximate cause of plaintiff's damages.

YES    NO    Check "YES" or "NO"

X      —

If you answered "NO," STOP AND FOREPERSON SIGN.
If you answered "YES," go to Question III.

QUESTION NO. III:  Re: Contributory Negligence

Has the defendant Michelin Tire Corporation established by a preponderance of the evidence that Leonard Richards was guilty of contributory negligence and was injured as a result of his contributory negligence.

YES    NO    Check "YES" or "NO"

—      X

If you answered "YES," go to Question No. IV.
If you answered "NO," go to Question No. V.

QUESTION NO. IV:

If you found the plaintiff was contributorily negligent, do you find that such negligence was a proximate cause of plaintiff's damages.

YES    NO    Check "YES" or "NO"

—      —

If you answered "YES," go Question No. VI.
If you answered "NO," go to Question No. V.

Richards asserts that Appellant must demonstrate the failure of both claims to succeed on its motion for JNOV or for a new trial with respect to either the wantonness or negligence cause of action. Although Richards is correct with respect to the JNOV motion, Appellant need only show the failure of any one claim to be entitled to a new trial with respect to the underlying cause of action.

Contrary to Richards' contentions, whether the Appellant must demonstrate the invalidity of one or all of Richards' claims does not depend on the structure of Richards' complaint. *See Ratner v. Sioux Natural Gas Corp.,* 770 F.2d 512, 518–19 (5th Cir.1985) (reversing and remanding general verdict for a new trial because one of six different misrepresentations making up plaintiffs' fraud claim was improperly submitted to the jury). Rather, the need to discredit one as opposed to all of the claims depends on the type of verdict rendered and the motion made, i.e., whether Appellant is seeking JNOV or a new

QUESTION NO. V:
We assess the plaintiff's damages at:
$ 36,235.00 for past loss of wages
$125,240.00 for future loss of wages
$       0    for physical pain and mental anguish and suffering

QUESTION NO. VI: Re: Wanton Claim
        Has it been established by a preponderance of the evidence that the defendant Michelin Tire Corporation violated a duty and that Leonard Richards was injured as a result of the breach of the defendant Michelin Tire Corporation's duty by:

YES      NO        Check "YES" or "NO"

                   CLAIM 2:  The defendant Michelin Tire Corporation was wanton in the design,
                   manufacture and sale, supply or distribution of the tire, OR
X        ___       Wantonly failing to warn and instruct Leonard Richards.

If your answer is "NO," STOP AND FOREPERSON SIGN.
If your answer is "YES," go to Question VII.

QUESTION NO. VII:
        If you found that the defendant was wanton, do you find that such wantonness was a proximate cause of plaintiff's damages.

YES      NO        Check "YES" or "NO"

X        ___

If you answered "NO," STOP AND FOREPERSON SIGN.
If you answered "YES," go to Question No. VIII.

QUESTION NO. VIII:
We assess the plaintiff's damages at:
$ 36,235.00 for past loss of wages
$$125,240.00 for future loss of wages
$       0    for physical pain and mental anguish and suffering

Go to Question No. IX.

QUESTION NO. IX.: Re: Punitive Damages
        Has it been established by clear and convincing evidence that punitive damages should be awarded.

YES      NO        Check "YES" or "NO"

X        ___

If your answer is "YES," fill in the blank space below and check under YES.
If your answer is "NO," check under NO, STOP AND FOREPERSON SIGN.

We assess punitive damages in the amount of $5,000,000.00

trial. *King v. Ford Motor Co.*, 597 F.2d 436, 439 (5th Cir.1979).[11] In other words, the fact that Richards lumped his negligent design and negligent failure to warn claims into one cause of action and did the same with his wanton design and wanton failure to warn claims is of no consequence. *See Ratner*, 770 F.2d at 518–19.

With respect to each cause of action, the jury's verdict was a general verdict. *See Toole v. McClintock*, 999 F.2d 1430, 1433 (11th Cir.1993) (where jury instructed that defendant could be liable for either designing an unreasonably dangerous product or for a negligent warning, verdict was a general verdict); *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 543 n. 1, 549 (5th Cir. 1978) (general verdict may be accompanied by special interrogatories).[12] Because the jury returned a general verdict, to be entitled to JNOV on either the wantonness or negligence cause of action, Appellant must show that Richards failed to make out a case under both his design and warning claims. *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 669 n. 7 (11th Cir.1993); *Carroll Kenworth Truck Sales v. Kenworth Truck Co.*, 781 F.2d 1520, 1528–29 (11th Cir.1986).

Thus, with regard to the JNOV motion, the "two-issue" rule applies.

■■■ However, the "two-issue" rule is inapplicable to a motion for a new trial as Appellant, with respect to each cause of action, need only show that the evidence is insufficient to support either one of Richards' claims to prevail on its motion for a new trial. *Carroll Truck Sales*, 781 F.2d at 1528–29; *see also Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1099 (11th Cir.1983) ("[U]nless [Richards] can support submission of each theory of liability submitted to the jury, we must remand for a new trial.").[13] Where, as here, two or more claims are submitted to the jury in a single interrogatory, a new trial may be required if either of the claims was erroneously submitted, as there is no way to be sure that the jury's verdict was not predicated solely on the invalid claim. *Prudential Ins. Co. v. Morrow*, 339 F.2d 411, 412–13 (5th Cir.1964); *Crist v. Dickson Welding, Inc.*, 957 F.2d 1281, 1286 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992); *Braun v. Flynt*, 731 F.2d 1205, 1206 (5th Cir.), *cert. denied*, 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984).[14] Thus, if error

11. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12. This case involves a general verdict via disjunctive interrogatories. Thus, Richards' reliance on *Stewart & Stevenson Servs. v. Pickard*, 749 F.2d 635 (11th Cir.1984) is misplaced as it concerned a Federal Rule of Civil Procedure 49(a) special verdict utilizing non-disjunctive interrogatories.

13. Richards relies on *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543 (11th Cir. 1984), *overruled on other grounds by Lindsay v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1101–02 (11th Cir.1987) in support of his argument that the "two-issue" rule applies to motions for a new trial. In *O'Donnell*, the jury said "yes" in response to an interrogatory asking, " 'Did the defendant either discriminate against the plaintiff because of her age or retaliate against the plaintiff because she filed a charge of age discrimination?' " 748 F.2d at 1549. The *O'Donnell* defendant moved for JNOV or a new trial based primarily on insufficiency of the evidence. We stated that the jury verdict could be affirmed "with a decision that the evidence under either prong is sufficient to overcome the [defendant's motion]."

*Id.* Although this statement was less than a model of clarity, a close reading of the opinion shows that it encompassed only the motion for JNOV. *See id.* at 1549–50 (implying that both of plaintiff's claims were properly submitted to the jury because plaintiff had shown that age was a determining factor in defendant's decisions regarding plaintiff's job placement). Moreover, it is well-settled that where one of two possible bases for a general verdict is unauthorized, the entire verdict must be reversed even though the other basis would support the verdict. *United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 618–19, 79 S.Ct. 517, 520, 3 L.Ed.2d 541 (1959); *Maccabees Mut. Life Ins. Co. v. Morton*, 941 F.2d 1181, 1184 (11th Cir.1991); *Walden v. United States Steel Corp.*, 759 F.2d 834, 838 (11th Cir.1985).

14. "An interrogatory containing multiple issues is really no better than a general verdict." *Dougherty v. Continental Oil Co.*, 579 F.2d 954, 960 n. 1 (5th Cir.1978) (citing *Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823–24 (5th Cir. 1965)), *vacated on joint stipulation of the parties*, 591 F.2d 1206 (5th Cir.1979). It presents the same dilemma as a general verdict submitted on two or more theories of law, one of which is invalid or incorrect. As we cannot determine upon which theory the jury verdict is predicated,

is shown on any of Richards' claims, reversal of the underlying cause of action is warranted. *Smith v. Southern Airways, Inc.,* 556 F.2d 1347–48 (5th Cir.1977); *Lee v. Wal-Mart Stores, Inc.,* 943 F.2d 554, 560 (5th Cir.1991), *as amended,* 951 F.2d 54 (5th Cir. 1992).[15]

## B. *Denial of J.N.O.V./new trial motion*

Appellant asserts that the evidence is insufficient to support a finding of wantonness or negligence on either, or both, the design defect or warning claims. Thus, it contends that the award of compensatory and punitive damages must be vacated. We agree.

### 1. Negligent design defect claim [16]

■ To prove defectiveness under Alabama law, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured its product. *Beech v. Outboard Marine Corp.,* 584 So.2d 447, 450 (Ala.1991); *Elliott v. Brunswick Corp.,* 903 F.2d 1505, 1507 (11th Cir.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991). In *Beech,* the Alabama Supreme Court stated:

> The existence of a safer, practical, alternative design must be proved by showing that: (a) [t]he plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that (b) taking into consideration such

factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probably seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

584 So.2d at 450 (citation omitted). Thus, under *Beech*'s first prong, Richards must show that some alternative design existed that would have eliminated or reduced his injuries. *Beech*'s second prong requires Richards to show that the alternative design was of greater overall safety than the design actually used. *See id.* (alternative design creating other dangers is not a safer design).

■ In this case, Richards demonstrated that Appellant could have created a tire with a larger bead wire or stronger beads and that, as compared to Appellant's tire, other manufacturers had bead wire designs that could withstand greater overinflation without bursting when mismatched. Accordingly, Richards satisfies *Beech*'s first prong. However, Appellant correctly asserts that Richards made no showing with regard to *Beech*'s second prong—that a tire utilizing a stronger bead wire that can better withstand overinflation when mismatched is of greater overall safety than the Michelin tire in question.[17] Appellant presented evidence demon-

---

we must reverse if either theory was invalid or incorrectly submitted to the jury. *Id.* at 960 n. 1; *Crist,* 957 F.2d at 1286. Accordingly, district courts should avoid questions that combine two issues disjunctively because a "yes" or "no" answer may refer to either issue. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2508, at 507 (1971); *see also Cunningham v. M–G Transport Servs.,* 527 F.2d 760, 761–62 (4th Cir.1975) (interrogatories should be limited to one issue per question). Instead, we suggest courts structure interrogatories in a manner similar to that used in *Bryan,* 566 F.2d at 543 n. 1.

**15.** Richards contends that because Appellant did not object to the special verdict forms, it waived its right to appeal. Alternatively, he argues that the failure to object authorizes this Court to sustain the verdict based on either claim. We reject these assertions. The failure to object to a proposed verdict format does not waive the right to object to the sufficiency of the evidence. *See, e.g., Austin–Westshore Constr. v. Federated Dep't*

*Stores,* 934 F.2d 1217, 1226 (11th Cir.1991). If one of Richards' claims lacked sufficient evidence to have been submitted to the jury, it is well-settled that we must reverse the jury's verdict. *See supra,* text accompanying notes 10–14. Furthermore, the record indicates that the court rejected Appellant's thirty-two interrogatories and instead chose the "either . . . or" interrogatories used in this case. Under these circumstances, it was the court's responsibility to ensure that the interrogatories were not deficient, i.e., to guarantee that they differentiated between the design and warning claims. *Laguna Royalty,* 350 F.2d at 823–25.

**16.** The parties are correct in asserting that Alabama law governs this appeal.

**17.** Richards contends that he has shown that a feasible, safe, alternative design existed by means of the following: (1) tests from 1973 and 1990 demonstrating that certain tires could withstand 200 p.s.i. when mismatched; (2) expert testimo-

strating that Michelin's beads were "superior" and that it is contrary to overall safety to have the strongest possible bead wire as the tire will not track and the vehicle will be undriveable on a highway. By contrast, Richards simply contends that because other tire manufacturers designed and sold tires employing these stronger beads, they must have concluded that the tires were of greater overall safety. The fact that an alternative design existed which would have reduced or eliminated Appellant's injuries does not mean that the alternative design was of greater overall safety. *See Vines v. Beloit Corp.*, 631 So.2d 1003 (Ala.1994) (affirming summary judgment on design defect claim where plaintiff presented no evidence that alternative design would reduce risks to workers, make the product safer, or have greater utility than product as presently designed); *Beech*, 584 So.2d at 450 (existence of feasible, alternative design does not establish existence of practical, safer, alternative design).[18] Thus, we conclude that insufficient evidence exists with regard to Richards' negligent design defect claim. Appellant does not challenge the sufficiency of the evidence with respect to Richards' negligent failure to warn claim. However, because we cannot determine whether the negligence verdict was improperly based on the design claim, we must, and do, reverse the district court's denial of Appellant's motion for a new trial with regards to the negligence cause of action.

## 2. Wanton design claim

Wantonness is to be determined by the facts and circumstances of each case. *Joseph v. Staggs*, 519 So.2d 952, 954 (Ala. 1988).[19] To be guilty of wantonness, the plaintiff must show that a defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty with *knowledge* of the existing conditions and that this act or omission would likely or probably lead to the plaintiff's injury. *Id.; Lakeman v. Otis Elevator Co.*, 930 F.2d 1547, 1553 (11th Cir.1991) (quoting *Lynn Strickland Sales and Serv. v. Aero–Lane Fabricators, Inc.*, 510 So.2d 142, 145 (Ala.1987)); *see also* ALA.CODE § 6–11–20(b)(3) (Supp.1989) (codifying common law standard of wantonness). Wantonness requires "knowledge that an act or failure to act does not merely increase the risk of injury, but that the act makes injury 'likely' or 'probable.'" *Toole*, 999 F.2d at 1435; *see also Coca–Cola Bottling Co. United, Inc. v. Stripling*, 622 So.2d 882, 884–85 (Ala.1993)); *Salter v. Westra*, 904 F.2d 1517, 1524–1527 (11th Cir.1990). Finally, wantonness is not negligence:

> While it may be difficult to define the exact point at which the probability of harm is sufficient to support a jury's finding of wantonness, courts and juries must attempt to discern that line in light of the fact that wantonness is distinct from negli-

---

ny stating that the bead wire technology used by these tires had been available since the 1930s; (3) Goodyear Tire Company was regularly using this type of bead by 1985; and (4) Michelin could have used, and at times did use, this type bead. Assuming that the record supports Richards' characterization of the evidence, it still does not address overall safety. The mere fact that stronger tires were made and sold by other manufacturers does not mean that such tires were safer than the Michelin tire at issue here. Had Richards proffered his own experts, perhaps he would have been able to demonstrate greater overall safety. However, on this record, Richards has not made such a showing.

**18.** Relying on *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 470 (11th Cir.1993), Richards contends that he need not show proof of a safer, alternative design. However, *Reynolds* involved liability for mismatched rim parts under the Alabama Extended Manufacturer's Liability Doctrine and it is therefore inapposite to this case.

**19.** For all cases filed after June 11, 1987, Alabama law requires that a plaintiff prove wantonness by "substantial evidence" to receive compensatory damages. *Hamme v. CSX Transp., Inc.*, 621 So.2d 281, 282–83 (Ala.1993); *Rommell v. Automobile Racing Club of Am., Inc.*, 964 F.2d at 1097 (11th Cir.1992). For claims accruing prior to June 11, 1987, this same standard governed the award of punitive damages. However, for claims accruing on or after June 11, 1987, wantonness must be shown by clear and convincing evidence to be awarded punitive damages. ALA.CODE § 6–11–20(a) (Supp.1989). Here, Richards' claim accrued prior to June 11, 1987. Thus, the district court erred in charging that his burden of proof for punitive damages was the "clear and convincing evidence" standard. However, because we hold that Richards has failed to prove even substantial evidence of wantonness, this error is harmless.

gence, and punitive damages are meant "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future."

*Salter,* 904 F.2d at 1526 (alteration in original) (citations omitted).

■ With regard to the wanton design claim, the question we are confronted with is whether Appellant consciously and intentionally refused to employ available technology (some safer, practical, alternative design) in reckless disregard of the fact that its failure to do so made the risk of mismatch explosions probable or likely. As Richards failed to show the existence of a safer, practical, alternative design, it cannot be said that Appellant refused to use such a design. Consequently, insufficient evidence supported Richards' wanton design claim.

### 3. Wanton failure to warn claim

■ Under Alabama law:

The manufacturer of a product which may be reasonably anticipated to be dangerous if used in a way which [it] should reasonably foresee it would be used is under a duty to exercise reasonable care to give reasonable and adequate warnings of any dangers known to [it], or which in the exercise of reasonable care [it] should have known and which the user of the product obviously could not discover.

*Bean v. BIC Corp.,* 597 So.2d 1350, 1353 (Ala.1992). Thus, in terms of wantonness, the issue is whether Appellant consciously and intentionally failed to give reasonable and adequate warnings with knowledge of, or reckless indifference to, the fact that the lack of warnings made Richards' injury likely or probable.

While conceding that it knew of mismatches, Appellant maintains that the undisputed evidence demonstrates that out of the thirteen to fifteen million 16-inch tires it has

manufactured, it knew of only four mismatches. It therefore insists that the punitive damages award must be vacated as insufficient evidence exists to show that it knew its conduct was likely to result in injury. Richards disagrees, contending that under Alabama law, if injury to even one person is likely or probable, then a manufacturer's failure to provide warnings constitutes wantonness. As Appellant knew of four mismatches, Richards asserts that its failure to warn constitutes wantonness.

■ Contrary to Richards' assertions, notice of prior injuries does not automatically create a jury question on wantonness. *Toole,* 999 F.2d at 1435; *Rommell v. Automobile Racing Club of Am., Inc.,* 964 F.2d 1090, 1096–98 (11th Cir.1992); *see also Benford v. Richards Med. Co.,* 792 F.2d 1537, 1538–39 (11th Cir.1986) (defendant not wanton despite knowing of the potential dangers of using steel in manufacturing hip prosthesis). In *Toole,* we reversed an award of punitive damages, holding that because the likelihood that silicone gel breast implants would rupture during surgery was less than one percent, such harm cannot be considered a "likely" event. 999 F.2d at 1435. Similarly, in *Rommell,* we held that the defendant racing association's knowledge of pit fires did not create a jury question as to whether the defendant was wanton in failing to provide pit crews with non-flammable clothing. 964 F.2d at 1096–98. Here, the evidence demonstrated that the actual incidence of mismatches was roughly one in millions and that Appellant knew of only four other mismatch incidents. Had Appellant been aware of a greater number of mismatch accidents, we may well have reached a different conclusion. However, based on this record, it cannot be said that mismatch explosions are likely or that the failure to warn Richards of the risks of mismatches made such explosions likely.[20]

---

**20.** Richards' expert witness testified that the tire's sidewall language did not meet his definition of a warning and that an adequate warning would have prevented Richards' accident. However, he also conceded that at the time the tire was manufactured, there was evidence that on-product warnings did not contribute to safety. Moreover, as discussed more specifically in footnote 3, *supra,* the National Highway Traffic Safe-

ty Administration declined to adopt more specific marking requirements for tires on the theory that the safety benefits would be insufficient. Thus, while more could have been said or done, Appellant's conduct cannot be seen as wanton. *Toole,* 999 F.2d 1436; *see Salter,* 904 F.2d at 1526–27 ("A jury may not find wantonness simply on the basis of a defendant's awareness that his actions (or failure to act) would entail more risks than

Furthermore, Appellant's compliance with both federal regulations and industry practices is some evidence of due care. *Elliot v. Brunswick Corp.*, 903 F.2d 1505, 1508 (11th Cir.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991); *Dunn v. Wixom Bros.*, 493 So.2d 1356, 1359–60 (Ala.1986).[21] We have repeatedly held that the issue of punitive damages should not go to the jury when a manufacturer takes steps to warn the plaintiff of the potential danger that injured him; such acts bar a finding of wantonness. *Toole*, 999 F.2d at 1436; *Kritser v. Beech Aircraft Corp.*, 479 F.2d 1089, 1096–97 (5th Cir.1973) (applying Texas law similar to Alabama law). In this case, the record demonstrates that Appellant complied with all requisite Federal Motor Vehicle Safety Standards, including Standard 119, which requires that "sufficient information [be placed] on the tires to permit their proper selection and use." *See* 49 C.F.R. § 571.119 (1992). Appellant embossed its tires with a sidewall marking indicating that the tire was a 16–inch radial tire. 49 C.F.R. § 571.119.S6.5(c). It placed information regarding tire-rim matching in the Tire and Rim Association's yearbook, § 49 C.F.R. § 571.119.S5.1, and in its own Passenger Light Truck Data Book. Appellant included similar information in materials provided to tire dealers and retailers and to various tire publications. Further, Appellant complied with Ford's request to place a warning on the tire by placing the following language onto its tires, "Mount only on approved 16 inch rims."[22] As shown, Richards has not demonstrated sufficient evidence of wantonness on his failure to warn claim.[23] Because Richards similarly failed to demonstrate sufficient evidence on his wanton design claim, JNOV should be granted in Appellant's favor with respect to Richards' wantonness cause of action.

## IV.  CONCLUSION

We VACATE the district court's denial of Appellant's alternative motions. We GRANT Appellant's motion for JNOV on Richards' wantonness cause of action. We likewise GRANT Appellant's motion for a new trial on Richards' negligence cause of action and REMAND for further proceedings consistent with this opinion.

---

not taking the action in question."); *Stallworth v. Illinois Cent. Gulf R.R.*, 690 F.2d 858, 863 (11th Cir.1982) (negligence in failing to appreciate the dangerousness of conditions is not wantonness).

**21.** We decline to accept the invitations of Appellant and Amici to hold that compliance with 49 C.F.R. § 571.119 precludes a finding of wantonness.

**22.** Richards claims that Michelin did not comply with industry standards because the language it added to its tires was only an instruction as opposed to the warning language used by Goodyear, Goodrich, Uniroyal and other tire makers. However, as with Appellant, these other tire makers placed warnings on their tires at the request of Ford which, significantly, also approved Michelin's language.

**23.** The cases relied on by Richards in support of his wanton design defect claim are easily distinguishable. *Lakeman v. Otis Elevator*, 930 F.2d 1547 (11th Cir.1991) involved inherently dangerous fumes from a cleaning solution while *Caterpillar, Inc. v. Hightower*, 605 So.2d 1193, 1196 (Ala.1992) concerned an open compartment skidder machine made in clear violation of industry standards. Although some parallels exist between this case and that of *Sears, Roebuck and Co. v. Harris*, 630 So.2d 1018 (Ala.1994) (defectively installed water heater), *Sears* too is distinguishable as it included expert testimony that the product was defective or unreasonably dangerous. No such testimony is present in this case.