PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/29/99
THOMAS K. KAHN
CLERK

_____

No. 98-9165

_____

D. C. Docket No. 1-96-cv-3017-WBH

JAMES WATKINS, BELINDA WATKINS, et al.,

Plaintiffs-Appellants,

versus

FORD MOTOR COMPANY,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(September 29, 1999)**

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and NANGLE[*], Senior District Judge.

FAY, Senior Circuit Judge:

Plaintiff-Appellants James and Belinda Watkins, as administrators of the Estate

---

[*]Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

of Brian Watkins, Stacy Purcell, Rachelle L. Oliver and Joseph Washo appeal the district court's order granting Ford Motor Company's motion for summary judgment. Raised on appeal are two issues: (1) whether the appellants' evidence was sufficient to meet the exception in Georgia's statute of repose on the design defect claim; and, (2) whether the failure to warn claim was subject to the same statue of repose. Because a question of fact exists regarding whether Ford's actions constituted a "willful, reckless, or wanton disregard for property or life," we conclude that it was error to dismiss the appellants' design defect claim. Similarly, we find that the appellants' failure to warn claim was not merely a restatement of their design defect claim and therefore was not subject to O.C.G.A. § 51-1-11's statute of repose. Accordingly, we reverse.

## I. **FACTS**

This is a products liability action stemming from an automobile accident that occurred on November 18, 1994. Plaintiff-appellant Joseph Washo ("Washo") was operating his pre-owned 1986 Ford Bronco II en route to a restaurant after a high school football game. Accompanying him were plaintiffs-appellants Stacy Purcell, Rachelle Oliver and plaintiffs'-appellants' decedent Brian Watkins.

While traveling in an eastward direction, the right side tires of Washo's Bronco II traveled a short distance off the road. Attempting to bring the vehicle back onto the

2

road, Washo steered to the left and lost control. In an effort to regain control of the Bronco II, he steered the vehicle back to the right. At this time the Bronco II flipped, rolling over approximately two and one half times.

As a result of the accident, Brian Watkins sustained a severe head injury and died. Rachelle Oliver sustained severe head injuries with bleeding on the brain, and fractured her hip, ankle, and clavicle. Joseph Washo and Stacy Purcell were also injured in the accident.

On November 14, 1996, the plaintiffs filed suit against Ford Motor Company alleging, among other things, handling and stability defects caused the Bronco II to rollover and that Ford failed to warn of the known rollover hazards. The district judge granted Ford's motion for summary judgment, finding the plaintiffs' negligence claims were barred by the statute of repose in O.C.G.A. § 51-1-11. The plaintiffs, arguing that their negligent design claim fell within the exception to the statute and that their failure to warn claim was not subject to the statute, filed this appeal.

## II.   STANDARD OF REVIEW

This Court reviews de novo the district court's grant of summary judgment, applying the same legal standard as the trial court. See Jones v. Firestone Tire & Rubber Co., 977 F.2d 527, 535 (11th Cir. 1992). We are required to resolve all reasonable inferences and facts in a light most favorable to the nonmoving party. See

Augusta Iron & Steel Works v. Employers Ins. of Wasau, 835 F.2d 855, 856 (11th Cir. 1988).

## III. DISCUSSION

Appellants brought this action against Ford Motor Company pursuant to Georgia's product liability statute, O.C.G.A. § 51-1-11, contending that Ford's Bronco II was defectively designed and that Ford failed to warn of the vehicle's dangerous propensities[1]. Subsection (c) of § 51-1-11 incorporates a statute of repose, barring claims for negligence if the suit is not brought "within ten years from the date of the first sale." O.C.G.A. § 51-1-11(c).

Not all negligence claims, however, are subject to the statute of repose. First, the statute does not bar claims filed more than ten years from the first date of sale if the plaintiff is able to adduce evidence sufficient to support a finding that the manufacturer acted with a "willful, reckless or wanton disregard for property or life." Id. Second, the statute of repose does not bar claims for failure to warn, regardless of the date of first purchase. See Id.

---

[1] Georgia Code § 51-1-11(c) reads, in pertinent part, "[t]he limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to he commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages ... arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer."

4

Here, there is no dispute that Washo's 1986 Bronco II was first purchased more than ten years prior to the filing of the instant action. Accordingly, the appellants based their negligent design claim on the exception to the statute of repose and claim sufficient evidence was present to support a finding of willful, reckless or wanton disregard. They also assign as error the district court's dismissal of their failure to warn claim, submitting that the district court erred by holding their failure to warn claim was simply a restatement of their negligent design claim and therefore subject to the statute of repose. For these reasons, they contend, this Court must reverse the order of the district court.

## A.    THE NEGLIGENT DESIGN CLAIM

As discussed above, negligent design claims filed more than ten years from the date of original purchase are barred unless the defendant acted with a willful, reckless or wanton disregard for property or life. See O.C.G.A. § 51-1-11; Chrysler Corp. v. Batten, 450 S.E.2d 208, 212(Ga. 1994). In the instant case, there is no question that Washo's 1986 Bronco II was first purchased more than ten years before the filing of suit and that, therefore, the appellants must meet an exception of the statute or be barred. The appellants contend that because a question of fact exists regarding the degree of Ford's culpability, summary judgement on their negligent design claim was error.

Georgia courts have defined the key words used in the statute. "Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences ... [as to be the] equivalent in spirit to actual intent." Batten 450 S.E.2d at 212 (quoting Hendon v. Dekalb County, 417 S.E.2d 705 (Ga. Ct. App. 1992)).

In this case, the appellants presented an array of evidence addressing Ford's knowledge of stability problems with the Bronco II and its decision to forgo recommended safety alterations in the design because it would either delay production or profits would be sacrificed. For example, the appellants presented evidence that Ford was aware of a "60 minutes" television program that revealed severe rollover and stability problems with the Jeep CJ - a vehicle the Bronco II was closely patterned after. Reacting to these stability problems, Ford engineers submitted five proposals intended to increase the stability of the Bronco II. Management selected the least expensive proposal, rendering the Bronco II less stable than the Jeep CJ. The appellants' design expert clearly stated that had Ford chosen proposal #5, at an additional cost of only $83.00 per vehicle, the Bronco II would have been a stable vehicle. See Affidavit of Melvin K. Richardson R-4-39 at ¶ 32. By selecting the least expensive measure, proposal #2, Ford made profit a priority over the safety of the consumers. Such evidence has supported findings of a reckless disregard for property

or life.  See  Mack Trucks, Inc. v. Conkle, 436 S.E.2d 635, 640 (Ga. 1993)(evidence that defendant's engineers "repeatedly informed ... other divisions ... that the frame rail was inadequate and should be replaced" was sufficient to support a finding of conscious indifference to consequences);  General Motors Corp. v. Moseley, 447 S.E.2d 302, 311-312 (Ga. Ct. App. 1994)(notwithstanding defendant's compliance with federal regulation, award of punitive damages was appropriate because defendant did not implement safety modifications for economic reasons)(reversed on other grounds); Ford Motor Co. v. Stubblefield, 319 S.E.2d 470 (Ga. Ct. App. 1984)(the defendant's "conscious decision to defer implementation of safety devices in order to protect its profits" was sufficient to support punitive damages).[2]

Ford contends, notwithstanding this evidence, that Richards v. Michelin Tire Corp., 21 F.3d 1048 (11th Cir. 1994), bars a finding of willful, reckless, or wanton disregard for property or life when the National Highway Traffic Safety Administration ("NHTSA") conducts a safety investigation into a product and

---

[2]We recognize that the case cited here address Georgia's punitive damages statute, O.C.G.A. § 51-12-5.1(b).  Punitive damages will only be awarded if, as shown by clear and convincing evidence, the defendant's actions constitute "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  The statute in issue here requires a showing, by the lower preponderance of the evidence standard, that the defendant's conduct amounts to a "willful, reckless, or wanton disregard for life or property."  O.C.G.A. § 51-1-11.  Because of the similarity between the two standards, we find these cases instructive when addressing the standard in O.C.G.A. § 51-1-11.

declines to adopt a standard recommended by the plaintiff.  We disagree with Ford's interpretation of <u>Richards</u>.

In <u>Richards</u>, the plaintiff's-decedent was killed when attempting to mount a tire[3].  His death was caused by an explosion when he "mismatched" a 16-inch tire with a 16.5-inch rim.  At trial, the plaintiff proceeded under theories of wanton design and wanton failure to warn.  The jury found for the plaintiff, finding the failure to warn of mismatches constituted a wanton disregard for life.

The defendant appealed the verdict, claiming the evidence did not support a finding of wantonness.  Although the manufacturer knew of mismatches, the evidence at trial showed that out of thirteen to fifteen million 16-inch tires, the manufacturer had knowledge of only four mismatches.  This Court agreed with the manufacturer, and held that this evidence was simply too remote to constitute a wanton failure to warn.  Contrary to Ford's argument, the court did not rule that the NHTSA's failure to adopt the warnings recommended by the plaintiff precluded a finding of wanton conduct.  Indeed, the court specifically noted that "[h]ad the [manufacturer] been aware of a greater number of mismatch accidents, . . . [a different conclusion] may well have [been] reached." <u>Richards</u>, 21 F.3d at 1058.  Thus, the holding in <u>Richards</u>

---

[3]Mounting a tire to a rim requires that the person match the tire to the rim.  It extremely important to match correctly, otherwise the tire is liable to explode.

did not bar a claim for wanton conduct because the Agency declined to adopt a minimum standard. Rather, the evidence was simply insufficient to prove that the manufacturer's conduct was wanton.

We also find Ford's second argument - that the totality of the evidence bars a finding of willful, reckless or wanton disregard for property or life - unpersuasive. In making this argument, Ford relies exclusively on the findings of the NHTSA. It is their contention that these findings so strongly refute the appellants' case that any finding of reckless or wanton disregard for life or property is untenable.

Specifically, Ford directs our attention to the NHTSA's rejection of a minimum stability standard. The NHTSA declined to adopt such a standard because "[t]he Agency does not believe that taking the single step of prescribing a minimum stability factor is the appropriate solution to the multifaceted problem of vehicle rollover." 52 Fed. Reg. 49033, 49035 (1987). Notwithstanding that decision, the Agency made clear that it "does not intend to imply that the stability factor has an insignificant role in rollover involvement," and further stated that "the stability factor has been shown to have a positive statistical relationship to the likelihood of a vehicle rolling over in an accident .... Those vehicles with higher stability factors tend to have lower rollover in a crash." Id. at 49036; 53 Fed. Reg. 34866, 34867(1988).

Moreover, a deeper reading of the Agency's reports reveals that its decision was

9

based on a variety of factors, including the fear that the industry would sacrifice other safety features in order to meet the minimum standard, and concluded that cost-benefit considerations did not justify such a standard. See 52 Fed. Reg. 49033, 49037. The decision not to promulgate such a minimum stability standard was not based on a finding that the stability ratio of a vehicle does not play a roll in the vehicles propensity to rollover. Therefore, the NHTSA's findings do not, as Ford contends, so strongly disprove the evidence offered by the appellants so that no reasonable juror could find that Ford acted with the requisite degree of conduct under O.C.G.A. § 51-1-11(c). We find that the district court relied too heavily on the findings of the NHTSA to hold that Ford's actions could not meet the exception carved out in O.C.G.A. § 51-1-11(c). Accordingly, we reverse and remand that portion of the district court's order.

## B.   FAILURE TO WARN

The appellants' next assignment of error is the district court's order granting Ford's motion for summary judgment on the failure to warn claim. Having found the negligent design claim barred by the statute of repose, the district court was persuaded that the failure to warn claim was simply a restatement of that claim and that it could not survive the time limitations. The statute, however, states in clear terms that "[n]othing in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from the use of a product once that danger becomes known to the

10

manufacturer." O.C.G.A. § 51-1-11(c). This duty to warn is a continuing one and may arise "months, years, or even decades after the date of the first sale of the product." Batten, 450 S.E.2d at 211.

And so, although Ford's argument may appear sound at first glance, the basis of the district court's ruling is contrary to the clear language of the statute and contrary to the interpretation of that language by the courts of Georgia. As stated by the Georgia Supreme Court, it is possible to have a situation where the plaintiff is barred from bringing a design defect claim and yet is allowed to proceed with a failure to warn claim based upon the dangers arising from the same alleged design defect. See Batten, 450 S.E.2d at 213 (although plaintiff was barred from bringing a negligent design claim, her claim "based on negligent failure to warn of the danger arising from the defectively-designed seat belt" was allowed to proceed to trial). Thus, even were we to conclude that there was no genuine issue of material fact as to the "willful, reckless, or wanton" conduct of Ford on the defective design claim, the appellants' failure to warn claim would not be barred automatically.

As to the record evidence, the appellants introduced evidence tending to show that Ford, prior to distribution of the Bronco II, had knowledge of stability problems and that the vehicle had a tendency to rollover at low speeds. The evidence concerning the vehicles dangerous propensities after distribution of the 1986 Bronco

11

II is greater still. In 1988, Ford's statisticians reported to management that the Bronco II had a rollover fatality rate 3 ½ times that of a standard utility vehicle. Tests done in that same year showed the Bronco II tipping at speeds at which other similar vehicles remained stable. In 1991 the NHTSA published the results of five different static stability tests on 57 production vehicles and the Bronco II rated worst overall. Ford failed to issue any post-sale warnings regarding these stability problems.

Ford also argues, in the alternative, that summary judgment was warranted because even had a more complete warning been given it could not have prevented the accident. This argument is based on the deposition testimony of the appellants' warning expert, Dr. Edward Karnes. In his deposition, Dr. Karnes stated that once a user made the decision to drive the Bronco II, no warning could guard against the dangers of rollover. Ford submits that if no warning is sufficient to prevent the risk of rollover, there can be no causation.

We find this reasoning unpersuasive, as it misinterprets what is required to advance a failure to warn claim. Under Georgia law, a manufacturer breaches its duty to warn if it fails to "adequately communicate the warning to the ultimate user or (2) fail[s] to provide an adequate warning of the product's potential risks" Thorton v. E.I. Du Pont De Nemours & Co., Inc., 22 F.3d 284, 289 (11th Cir. 1994). The first failure to warn claim centers on issues such as location and presentation. The focus of the

latter claim is on the content of the warning, inquiring whether the warning is sufficient to apprize the user of the dangers associated with the use of the product.

Although a warning may have the net effect of preventing an accident, that is not what is required by the law. The law merely requires the warning to inform the consumer of the nature and existence of the hazard, allowing him to make an informed decision whether to take on the risks warned of. See Wilson Foods Corp. v. Turner, 460 S.E.2d 532, 534 (Ga. Ct. App. 1995); RESTATEMENT (Third) OF TORTS (Products Liability) § 10 (1997) ("Whether or not many persons would, when warned, nonetheless decide to use or consume the product, warnings are required to protect the interest of those reasonable foreseeable users or consumers who would, based on their own reasonable assessments of the risks and benefits, decline product use or consumption.").

In this case, Dr. Karnes' statement does not negate the contention that the warning on the Bronco II did not properly apprize the consumer of the risk associated with operating the vehicle (in fact it is his opinion that the warning was insufficient). It simply expresses his belief that nothing may be done to protect the consumer from risk of rollover once the consumer decides to take on the risk warned of. The question that must be answered by the fact finder is whether the warning given was sufficient or was inadequate because it did not "provide a complete disclosure of the existence

13

and extent of the risk involved." Thorton 22 F.3d at 289 (internal quotations and citations omitted).

Ford also argues that because Dr. Karnes found that the warning used on the Bronco II was sufficient when used on other sports utility vehicles, the problem cannot be with the warnings content. We find this contention unpersuasive as well. What may be an adequate warning for one product is not necessarily adequate for the next. It was, of course, precisely because of the Bronco II's greater propensity to rollover that a reasonable fact finder could conclude that Ford was required to provide a more detailed warning for this vehicle.

Because adequate evidence exists to advance appellants' failure to warn claim and because the failure to warn claim is not simply a restatement of the design defect claim, the district court's grant of summary judgment was error. Accordingly, we reverse.

## CONCLUSION

We REVERSE the district court's order barring the appellants' claims. The Georgia statute of repose provides for two exceptions: (1)the existence of willful, reckless, or wanton disregard for property or life; and (2)a failure to warn claim. We find there is sufficient evidence in the record to give rise to genuine issues of material facts on both exceptions. Consequently, we vacate the summary judgment entered in

14

favor of the appellee and remand the matter for trial.

VACATED, REVERSED and REMANDED.